UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LIGHTBOX VENTURES, LLC,<br><br>                        Plaintiff,<br><br>      -against-<br><br>3RD HOME LIMITED and WADE SHEALY,<br><br>                        Defendants. | AMENDED COMPLAINT<br><br>16-cv-02379 (DLC)<br><br>Plaintiffs Demand<br>Trial by Jury |

Plaintiff LightBox Ventures, LLC ("LightBox"), by its attorneys, Scarola Malone & Zubatov LLP, as and for its Amended Complaint herein, alleges as follows:

*The Nature of the Action*

1.      This breach of contract, breach of fiduciary duty and declaratory judgment and injunctive relief action arises from plaintiff LightBox and defendant 3RD Home Limited's ("3RD Home") joint venture to create a website for the purpose of engaging in the business of vacation and luxury home sales and resales.  The parties' agreement provides for a 50/50 revenue split (after LightBox recoups startup costs), with LightBox to take the active role in developing the website and sole role managing the business while 3RD Home was to be a passive partner, with its principal obligation being to activate and maintain a prominent link to the new site on its own already-established website that is engaged in the business of short-term vacation property swaps and to relay any home sales business leads to LightBox. Instead, after LightBox developed the new website and made it fully operational, 3RD Home, as directed, in all respects and as to every substantive act or omission by 3RD Home at issue herein, by its founder, chairman and CEO, defendant Wade Shealy, not only refused to

activate and maintain a link to that site but began to engage in a scheme to *compete* with and effectively *steal and destroy* the business of the joint venture and of its joint venture partner and to route home sales opportunities to itself rather than to the joint venture. 3RD Home, as directed by Shealy, likewise began to sign exclusive, unauthorized and undisclosed deals with third-party brokers to bring in luxury home sales, and such deals enriched 3RD Home and those third parties at LightBox's expense; and since the filing of this case, 3RD Home, as directed by Shealy, has unilaterally acted to shut down the joint venture's business and website entirely.

2.      As detailed below, 3RD Home's conduct constitutes a breach of the parties' agreement and a breach of the fiduciary duty 3RD Home owed to LightBox, its partner in the parties' joint venture. Shealy's conduct in directing the acts and omissions of 3RD Home that are  at issue renders him personally liable for 3RD Home's tortious acts and also constitutes aiding and abetting 3RD Home's breach of its fiduciary duty to LightBox. As such, LightBox is entitled to compensatory and punitive damages against 3RD Home and Shealy, a declaration that 3RD Home has materially breached the agreement and, in the alternative, a declaration that the agreement has been validly terminated for cause by LightBox or an injunction ordering 3RD Home to comply with the agreement's terms, as well as attorneys' fees and costs per the terms of the parties' agreement.

*The Parties*

3.      Plaintiff LightBox Ventures is a limited liability company organized and existing under the laws of the State of New York, with its principal place of business in New York, New York.

4.      Defendant 3RD Home is a limited company organized and existing under the laws of the Cayman Islands, with its principal place of business in Brentwood, Tennessee.

5.      Defendant Wade Shealy is an individual who is the founder, chairman and CEO of 3RD Home and who resides in the State of Tennessee.

*Jurisdiction and Venue*

6.      Jurisdiction in this Court is proper under 28 U.S.C. §1332(a) because plaintiff is a citizen of the State of New York, defendants are citizens of the State of Tennessee and/or the Cayman Islands, and the amount in controversy exceeds $75,000.

7.      Venue in this Court is proper under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in the State of New York insofar as plaintiff operated the business at issue from the State of New York and was damaged in New York.  Venue is also proper in this Court because the parties' agreement provides for litigation of any disputes in this forum.

*Background*

A.  *The Parties and Their Agreement*

8.      Plaintiff LightBox is an entity that had entered into the business of starting a real estate web site through which owners, brokers and developers around the world could list for sale high-end properties (such as vacation homes), as well as fractional shares in such properties.  In order to maximize this business opportunity, it determined to partner with defendant 3RD Home, which had an established website at www.3rdhome.com, and which website was a global site that allowed users to swap weeks in their luxury properties.  Because the 3RD Home website already had upwards of 5,000 members

3

educated in the asset of luxury vacation homes and fractional shares in such homes, the partnership would provide LightBox with a ready customer base of members as well as a steady stream of non-member visitors to the 3RD Home site who are likely buyers and sellers of the properties for which LightBox and the joint venture would be creating a buy/sell market on the internet.

9.      To consummate this business relationship, LightBox and 3RD Home entered into an agreement on July 13, 2015 (the "Agreement," attached as Exhibit A hereto), negotiated by and under defendant Shealy's direction and signed by Shealy on 3RD Home's behalf, per which LightBox and 3RD Home agreed "to establish a joint venture between the parties to create an online platform" for such luxury home sales, *see id.* at Preamble, and, as described further below, to split profits from the venture, *i.e.*, real estate commission revenue, equally in exchange for 3RD Home providing a prominent link to LightBox's website on its own site.  (The parties later, on December 4, 2015, entered into an amendment to the Agreement ('the "Amendment," attached as Exhibit B hereto) that extended the initial term of the Agreement from July 13, 2017, *see* Ex. A, ¶15, to July 1, 2018, subject to renewal in perpetuity provided certain benchmarks were met, and otherwise amended, *inter alia*, the "Termination" provisions of the Agreement.)

10.      Per the Agreement, LightBox would be responsible for, and bear all costs associated with, building its website and running its business (other than those costs the parties might later agree to share in jointly promoting the business).  *See* Ex. A, ¶1.  After recouping its startup costs associated with creation of its website, LightBox would then begin to split profits from the venture equally with 3RD Home.  *See id.*, ¶2(b).

11.      In exchange, 3RD Home's principal responsibility would be to activate and maintain a prominent link on www.3rdhome.com to the new website that LightBox would

develop. *See id.*, ¶2(a).  It would "forward all inquiries regarding sales and purchases of vacation homes, residence clubs, fractionals and the like to [LightBox] exclusively and in a timely manner," and "be a passive partner in the sales and marketing of these homes, with its only active role being the maintenance of the links on the 3RD Home site." *Id.*, ¶2(c). 3RD Home further agreed "that this arrangement is exclusive and that they will not enter into any similar arrangement with another sales and marketing organization without the permission of [LightBox]." *Id.*, ¶2(d).

### B.  3RD Home's Breach of the Agreement

12.     In January 2016, LightBox's website (www.3rdHomerealestate.com) (although the Agreement referred to the site as having the URL and website name "www.yourhome.com," the parties later agreed it would be "www.3rdHomerealestate.com") became operational and was ready to be linked to by the 3RD Home website, as required by the Agreement.

13.     However, 3RD Home, as directed by Shealy, failed to provide and maintain the requisite link.  This situation was not remedied despite repeated requests by LightBox that 3RD Home comply with its principal obligation pursuant to the Agreement's terms.

14.     Furthermore, in contravention of the Agreement's express terms, far from being a "passive partner in the sales and marketing of these homes, with its only active role being the maintenance of the links on the 3RD Home site," *id.*, ¶2(c), 3RD Home, as directed by Shealy, has not only taken an active role in the business, to LightBox's detriment, but, from the outset, set about competing with LightBox and establishing its own luxury home

sale business with competitors of the joint venture that would steer commission revenue toward itself and others and away from LightBox.

15.     In particular, in contravention of the provision requiring it to "forward all inquiries regarding sales and purchases" to LightBox so that LightBox could manage such business as it saw fit, 3RD Home, as directed by Shealy, has made multiple, unauthorized and undisclosed deals with third-party brokers to sell to them exclusive brokerage deals in key geographic areas so that, instead of all real estate commissions from transactions going to the joint venture, such brokers would instead receive the vast majority of commission revenue.  Such exclusive brokerage deals, moreover, effectively eliminated the majority of potential listings for any geographical area subject to the exclusive arrangement.  The net effect of these unauthorized arrangements was to reduce the joint venture's revenue dramatically, while simultaneously destroying potential relationships LightBox could have cultivated and intended to cultivate in such areas.  Compounding the problem, in breach of the Agreement's profit-sharing arrangement, on top of failing to disclose such deals to LightBox, 3RD Home, as directed by Shealy, has not accounted to LightBox for any revenue it received from such brokers in exchange for entering into exclusive arrangements with them.

16.     Still more egregiously, instead of abiding by the terms of its partnership with LightBox, 3RD Home, as directed by Shealy, has begun to compete directly with and effectively steal the business of the joint venture and of its joint venture partner by steering luxury home sales business away from the joint venture with LightBox and by starting to engage in home sales transactions and related business arrangements without bringing these to the attention of LightBox at all.  To this end, 3RD Home, as directed by Shealy, has retained employees for the specific purpose of bringing such business to itself rather than to

6

the joint venture and had even made unauthorized changes to the

www.3rdHomerealestate.com website in order to attract such private deals.

17.     Furthermore, instead of being a faithful partner in the parties' joint venture, 3RD Home, as directed by Shealy, has used the luxury home sale business largely as a means to drive its own core business of vacation property swaps.  Specifically, more concerned with adding members who might make use of its property-swapping services than with earning commissions off of property sales, it entered into arrangements with brokers that sacrificed commission revenue on sales in exchange for maximizing its membership.

18.     Shortly after this case was commenced, 3RD Home's President, Steven Zacks, abruptly resigned his position and left the company, upon information and belief, for reasons that included Shealy's conduct with regard to the joint venture and LightBox.

19.     Upon information and belief, Mr. Shealy has made no announcement of Mr. Zacks' departure to 3RD Home shareholders or customers, but in the wake of that departure, Mr. Shealy redoubled his efforts to destroy the joint venture and the business of LightBox.

20.     Upon information and belief, Mr. Shealy redoubled his efforts to engage in competing agreements with other brokerages.

21.     Those agreements, or at least some of them, provided that any 3RD Home customer engaging in a short-term property swap in a geographic area covered by such an agreement would be given a specific direction in writing to contact the competing brokerage about sales transactions possibilities. Some or all of those agreements also required 3RD Home to give these competing exclusive brokers lists of 3RD Home members and contact information in their geographic areas.

7

22.    Then, on a specific date not determined but in the days leading up to a scheduled mediation in this case, Shealy, who had, as a technical matter, retained control of the URL/website domain for the joint venture and LightBox at www.3rdhomerealestate.com, caused technical changes to be made such that any visit to www.3rdhomerealestate.com would not take the visitor to the joint venture's website, but instead, without any explanation, to 3RD Home's own website at www.thirdhome.com.

23.    At the same time, Shealy caused a financial report to be sent to investors in 3RD Home, mid-day during the mediation session, but, upon information and belief, took affirmative steps to ensure that the report was not delivered to the principal of LightBox, who is himself a 3RD Home investor.  The report, when ultimately obtained by LightBox, made clear 3RD Home's extremely distressed financial situation in details theretofore not known.

24.    After Shealy disabled the joint venture website, numerous vigorous complaints were made to LightBox by parties that had engaged the joint venture and LightBox to list properties on the now missing website.

25.    LightBox in turn complained vigorously to 3RD Home, at that point through counsel.

26.    3RD Home and Shealy persisted in this course of conduct, and the website continues to redirect visitors to 3RD Home's website.

27.    LightBox took steps to mitigate the damages from this conduct, reestablishing the joint venture website as www.3rdhomerealty.com, in the form in which it had appeared before it had been disabled by Shealy, but was then met with a cease and desist letter from attorneys purporting to represent 3RD Home and demanding that this

substitute site be disabled under a threat that LightBox would be sued based upon claims in the nature of alleged trademark infringement.

28.     In the circumstances, that website was disabled solely by reason of the threats made.

### FIRST CAUSE OF ACTION AGAINST 3RD HOME
#### (Breach of Contract)

29.     Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth here.

30.     By failing, even after repeated requests to do so, to activate and maintain a prominent link (or, indeed, any link) to LightBox's luxury home sale website and by taking the other steps described herein to steal and destroy the joint venture's and LightBox's business, 3RD Home, acting under Shealy's direction, has breached its most essential duties under ¶2(a) of the Agreement.

31.     LightBox has at all times performed pursuant to the Agreement.

32.     By reason of the foregoing, LightBox is entitled to compensatory damages in an amount to be proven at trial, plus associated interest and the fees and costs incurred in connection with this action, as provided for in Agreement, ¶4(c).

### SECOND CAUSE OF ACTION AGAINST 3RD HOME
#### (Breach of Contract)

33.     Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth here.

34.     By taking an active role, even apart from its destructive role, in the running of the joint venture, signing unauthorized exclusive deals with third-party brokers, failing to disclose such deals and failing to account to LightBox for revenue earned from the

signing of those exclusive deals and taking steps to steal and destroy the joint venture's and LightBox's business, 3RD Home, acting under Shealy's direction, has breached its obligation to be a "passive partner in the sales and marketing of ... homes, with its only active role being the maintenance of the links on the 3RD HOME site," breached its obligation to "forward all inquiries regarding sales and purchases of vacation homes, residence clubs, fractionals and the like to [LightBox] exclusively and in a timely manner" and breached its obligation to share all profits from the joint venture — after LightBox has been reimbursed for its out-of-pocket costs in building the joint venture's website — 50/50. *See id.*, 2(b) & (c).

35.    LightBox has at all times performed pursuant to the Agreement.

36.    To the extent any of 3RD HOME's conduct is found to be neither expressly permitted nor forbidden by the terms of the Agreement, it nonetheless breaches the Agreement by virtue of constituting a breach of the covenant of good faith and fair dealing implicit in every contract as a matter of law, insofar as it deprives LightBox of significant benefits to which it is entitled under the Agreement.

37.    By reason of the foregoing, LightBox is entitled to compensatory damages in an amount to be proven at trial, plus associated interest and the fees and costs incurred in connection with this action, as provided for in Agreement, ¶4(c).

### THIRD CAUSE OF ACTION AGAINST 3RD HOME
### (Breach of Contract)

38.    Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth here.

39.    By entering into competition against its own joint venture with LightBox, steering home sales business away from the joint venture with LightBox, engaging in unauthorized, undisclosed and unaccounted-for home sales business for its own purposes

and profit, including, *inter alia*, entering into deals that sacrificed the revenue of the joint venture for the purpose of adding members for its own core business of vacation property swaps, and making unauthorized changes to LightBox's and the joint venture's website in order to attract such private deals, and ultimately taking steps to steal and destroy the joint venture, 3RD Home, acting under Shealy's direction, has breached the Agreement (at ¶¶2(b), (c) and (d)).

40.     LightBox has at all times performed pursuant to the Agreement.

41.     To the extent any of 3RD HOME's conduct is found to be neither expressly permitted nor forbidden by the terms of the Agreement, it nonetheless breaches the Agreement by virtue of constituting a breach of the covenant of good faith and fair dealing implicit in every contract as a matter of law, insofar as it deprives LightBox of significant benefits to which it is entitled under the Agreement

42.     By reason of the foregoing, LightBox is entitled to compensatory damages in an amount to be proven at trial, plus associated interest and the fees and costs incurred in connection with this action, as provided for in Agreement, ¶4(c).

### FOURTH CAUSE OF ACTION AGAINST 3RD HOME
(Declaratory Relief)

43.     Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth here.

44.     3RD Home's breaches of the Agreement go to the root of the Agreement and are so substantial that they defeat the parties' purpose in entering into the Agreement.

45.     LightBox has at all times performed pursuant to the Agreement.

46.     Accordingly, LightBox asks for a declaration that 3RD Home's actions constitute material breaches of the Agreement and that, therefore, LightBox may be relieved of any further performance obligations pursuant to the Agreement, while 3RD Home would not be entitled to enforce the Agreement against LightBox.

### FIFTH CAUSE OF ACTION AGAINST 3RD HOME
(Declaratory Relief)

47.     Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth here.

48.     Pursuant to the Amendment, LightBox may terminate the Agreement for cause "if 3RD HOME does not adequately create an attractive inventory of homes and/or generate adequate sales leads." Ex. B, ¶15(d).  This paragraph further provides that "if 3RD HOME is unable to cure such poor performance within a reasonable period of time, and LIGHTBOX VENTURES decides to exercise its right to terminate the Agreement due to cause, 3RD HOME agrees not to re-enter the business of or otherwise operate, in any manner, an online platform for the sale and resale of vacation homes and fractional ownership properties or otherwise engage in any venture which is intended to compete with or does compete with LIGHTBOX VENTURES in the business contemplated by this Agreement for a period of two (2) years following the date of termination of this Agreement." *Id.*

49.     As described above, by failing to abide by its contractual obligation to activate and maintain a link to the joint venture's website and by variously interfering with, competing with and stealing and destroying the joint venture's business, 3RD Home has consistently failed to "create an attractive inventory of homes and/or generate adequate sales leads" for the joint venture.

12

50.     It has, moreover, repeatedly and for months on end, failed to make any effort to comply with LightBox's requests to cure these breaches and, as such, has, within the meaning of Amendment ¶15(d), been "unable to cure such poor performance within a reasonable period of time."

51.     For this reason, LightBox may choose to exercise its right to terminate for cause pursuant to Amendment, ¶15(d).

52.     LightBox asks for a declaration that the Agreement may be validly terminated for cause by LightBox.

### SIXTH CAUSE OF ACTION AGAINST 3RD HOME
### (Injunctive Relief — Specific Performance)

53.     Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth here.

54.     In the alternative to plaintiff's fourth and fifth causes of action for declaratory relief, LightBox is entitled to specific performance of the Agreement by 3RD Home.

55.     A valid contract between these parties exists, plaintiff has substantially performed its part of that contract, and both parties are able to continue to perform their duties pursuant to that contract.

56.     Equitable factors favor enforcement of the Agreement.  In the absence of injunctive relief in its favor, LightBox would sustain irreparable harm from continuing damage to its business and the balance of hardships tips strongly in LightBox's favor.

57.     As such, LightBox is entitled to a permanent injunction mandating 3RD Home's compliance with the Agreement's terms.

## SEVENTH CAUSE OF ACTION AGAINST 3RD HOME
### (Breach of Fiduciary Duty)

58.     Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth here.

59.     In entering together into the business of luxury home resales and collaborating to develop that business, LightBox and 3RD Home became joint venturers in that business, as the Agreement expressly states, *see id.* at Preamble, and as would be the case even absent the Agreement's express language to that effect.

60.     As a joint venture with LightBox, 3RD Home owed LightBox a fiduciary duty to act in good faith and deal fairly in LightBox's best interests.

61.     3RD Home breached that duty when, instead of working together to consummate the parties' business, it began to compete with LightBox and solicit and steal for itself business that rightfully belonged to the joint venture and later took steps to steal and destroy the joint venture's and LightBox's business.

62.     3RD Home's actions were a substantial factor in injuring the business of the joint venture and, therefore, of LightBox.

63.     By reason of the foregoing, LightBox is entitled to compensatory damages in an amount to be proven at trial, plus associated interest, as well as punitive damages and the fees and costs incurred in connection with this action, as provided for in Agreement, ¶4(c).

EIGHTH CAUSE OF ACTION AGAINST WADE SHEALY
(Personal Liability for Tortious Conduct
and Aiding and Abetting a Breach of Fiduciary Duty)

64.     Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth here.

65.     By virtue of the fact that he was the principal decision-maker on 3RD Home's behalf in entering into the joint venture and the Agreement with LightBox, Wade Shealy had actual knowledge of 3RD Home's fiduciary obligations to LightBox.

66.     By virtue of the fact that he at all times directed 3RD Home's actions that breached its fiduciary obligations to LightBox, Shealy knowingly induced and participated in and aided and abetted those breaches.

67.     As described above, LightBox sustained actual damages as a result of 3RD Home's breach of its fiduciary duties to LightBox.

68.     By reason of the foregoing, LightBox is entitled to compensatory damages against Shealy in an amount to be proven at trial, plus associated interest, as well as punitive damages and the fees and costs incurred in connection with this action, as provided for in Agreement, ¶4(c).

PRAYER FOR RELIEF

WHEREFORE, plaintiff LightBox demands that judgment be entered in its favor and against 3RD Home and Wade Shealy as follows:

1.     on the first cause of action, ordering 3RD Home to pay money damages in an amount to be proven at trial, plus associated interest and the fees and costs incurred in connection with this action, as provided for in Agreement, ¶4(c);

2.      on the second cause of action, ordering 3RD Home to pay money damages in an amount to be proven at trial, plus associated interest and the fees and costs incurred in connection with this action, as provided for in Agreement, ¶4(c);

3.      on the third cause of action, ordering 3RD Home to pay money damages in an amount to be proven at trial, plus associated interest and the fees and costs incurred in connection with this action, as provided for in Agreement, ¶4(c);

4.      on the fourth cause of action, declaring that 3RD Home's actions constitute material breaches of the Agreement and that, therefore, LightBox is relieved of any further performance obligations pursuant to the Agreement, while 3RD Home is not entitled to enforce the Agreement against LightBox;

5.      on the fifth cause of action, declaring that the Agreement has been validly terminated for cause by LightBox;

6.      on the sixth cause of action in the alternative, enjoining 3rd Home to comply with its obligations under the parties' Agreement;

7.      on the seventh cause of action, ordering 3RD Home to pay money damages in an amount to be proven at trial, plus associated interest, plus punitive damages and the fees and costs incurred in connection with this action, as provided for in Agreement, ¶4(c);

8.      on the eighth cause of action, ordering Wade Shealy to pay money damages in an amount to be proven at trial, plus associated interest, plus punitive damages and the fees and costs incurred in connection with this action, as provided for in Agreement, ¶4(c);

16

for the fees and costs incurred in connection with this action, as provided for in Agreement,

¶4(c); and ordering such other and further relief for LightBox and against 3RD Home and

Wade Shealy as the Court may deem just and proper.

Dated:   New York, New York
         August 24, 2016

                                    SCAROLA MALONE & ZUBATOV LLP

                                    By_____
                                         Richard J.J. Scarola
                                         Alexander Zubatov
                                    *Attorneys for Plaintiff LightBox Ventures, LLC*
                                    1700 Broadway
                                    41st Floor
                                    New York, NY  10019
                                    Tel.:  (212) 757-0007