# UNITED STATES DISTRICT COURT
**For the**
**Southern District of New York**

| | | |
|---|---|---|
| **LIGHTBOX VENTURES, LLC,** | ) | |
| Plaintiff/Counter-Defendant | ) | |
| | ) | |
| v. | ) | Civil Action No. 16-cv-02379 (DLC) |
| | ) | |
| **3RD HOME LIMITED/WADE SHEALY**, | ) | |
| Defendants/Counter-Plaintiff and | ) | **DEFENDANTS':** |
| Third-Party Plaintiff | ) | **(1) RESPONSE TO AMENDED COMPLAINT,** |
| | ) | **(2) COUNTERCLAIM, AND** |
| | ) | **(3) THIRD-PARTY CLAIM** |
| **3RD HOME LIMITED/WADE SHEALY,** | ) | |
| Third-Party Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **ANDREW ELLNER**, | ) | |
| Third-Party Defendant. | ) | |

In response to the Plaintiff's Amended Complaint [Docket No. 46], the Defendant, *3rd Home Limited* ["3rd Home"], states as follows:

1.    A.    This paragraph of the Complaint contains a one-sided narrative of Plaintiff's allegations based upon facts which Defendants' dispute.  Accordingly, ¶ 1 is denied, as stated.

B.    3rd Home additionally states that it operates a luxury second home exchange program through an online program.  Individuals with second homes become Members of 3rd Home's program and then deposit 'weeks' (vacation time) in their homes into the club. Members can then visit and use the second homes of other Members in exchange for allowing similar Members use of their homes.

C.    In the summer of 2015, Plaintiff solicited 3rd Home about an opportunity. Plaintiff and 3rd Home then entered into negotiations whereby a joint venture would be created

-1-

for a limited purpose; namely, 3rd Home would create a link on its existing website and Plaintiff could market fractional shares.  3rd Home would then allow approved 3rd Home Members to list their homes for sale on the real estate sale site.  The Plaintiff was to assist 3rd Home's Members regarding fractional shares.  After the agreement was executed, but before the program was actually launched, there developed a difference in Plaintiff's expectations from those of 3rd Home.  It became evident to 3rd Home that Plaintiff sought to also list homes for sale from not just Members, but also non-Members.  However, the parties never agreed to a mutual agreement on those larger opportunities.  As a result, and in order to provide further clarity to the agreement, the parties executed an Amendment on December 4, 2015.  The Amendment expanded the rights of both parties to terminate the agreement on certain scenarios <u>with</u> cause, and in other scenarios <u>without</u> cause.  The Plaintiff then insisted on moving forward in other areas, beyond the scope of the agreement.  3rd Home continued to offer to implement the deal, as originally reached.  The Plaintiff sometimes declined, otherwise, he was non-responsive.  As a result, and less than ninety (90) days thereafter, and prior to the joint venture actually being launched, 3rd Home exercised its termination rights.  On March 8, 2016, it provided written notice to the Plaintiff that it exercised its termination rights under ¶15.  By follow-up notice, dated March 21, 2016, 3rd Home advised Plaintiff that the valuation of the joint venture should be addressed in order that the venture (which was still only in its infancy) could wrap up its affairs to the extent it had any.  Several days thereafter Plaintiff filed this lawsuit contending that 3rd Home had breached the agreement and that Plaintiff is entitled to extensive monetary damages.

2.    A.    The allegations in ¶ 2, concerning an alleged breach of contract, are based on the assumption that the agreement was fully implemented after its execution.  To the contrary, the parties had differences of opinion following the execution of the agreement and, pursuant to

the provisions of Section 15(e), 3rd Home terminated the agreement pursuant to the express termination provisions of the agreement. Accordingly, 3rd Home denies that its conduct constitutes a breach of the agreement, or that the Plaintiff is entitled to damages or other relief.

    B. The actions of Mr. Shealy were on all occasions committed in connection with his role as 3rd Home's Chairman. Mr. Shealy was not a party, individually, to the agreement or the amendment to the agreement. Any action that Mr. Shealy took regarding the agreement was as an authorized representative of 3rd Home, and not individually. Moreover, all of Mr. Shealy's conduct was conducted in good faith and with the understanding that his decisions as Chairman were in the best interest of 3rd Home. Accordingly, Mr. Shealy denies that his conduct was tortious or otherwise actionable.

  3.  Admitted.

  4.  Admitted.

  5.  Admitted.

  6.  3rd Home denies that this Court has jurisdiction under 28 U.S.C. §1332(a). While there is diversity of citizenship between the parties, the amount in controversy does not exceed the statutory threshold of $75,000. The business never launched and, therefore, it has little or no value. Mr. Shealy is not (and has never been) a resident of the State of New York. Mr. Shealy is not (and has never been) a party to the agreement with LightBox. Accordingly, Mr. Shealy denies that he is subject to the jurisdiction of the Southern District of New York.

  7.  A.  3rd Home denies that this Court is the proper venue pursuant to 28 U.S.C. §1391(b)(2). First, it is denied that a "*substantial part of the events or omissions giving rise to the claim*" occurred in the State of New York. To the contrary, while the Plaintiff is located in New York, 3rd Home is located in Tennessee. The agreement between the parties was executed electronically and, therefore, there was no nexus connection, per se, with the State of New York

in relation to the execution of the agreement.   Furthermore, the gravamen of Plaintiff's allegations concern acts or omissions of 3rd Home, none of which occurred or should have occurred in the State of New York.   Second, and while the parties' agreement contained a forum selection clause, that agreement was terminated pursuant to the express termination provisions of the contract before ever launching.   The allegations in the Complaint do not arise from the scope of the agreement but instead, that 3rd Home allegedly usurped the business opportunities of the parties' partnership.   These allegations overlook the fact that 3rd Home properly and timely terminated the agreement.   Therefore, the partnership had no right to the aforementioned business opportunities.   Accordingly, the forum selection clause in the agreement has not or should not be triggered by the mere allegations of the Plaintiff.

B.      Mr. Shealy denies that this Court is the proper venue pursuant to 28 U.S.C. § 1391(b)(2).   The actions of Mr. Shealy were all taken in his capacity as an authorized representative of 3rd Home.   Those decisions were reached in 3rd Home's offices in Tennessee and carried out from 3rd Home's offices in Tennessee.   The actions of Mr. Shealy were not conducted wholly or in any manner in the State of New York.

8.      The first sentence of ¶ 8 is admitted, upon information and belief.   3rd Home is without sufficient information to admit or deny Plaintiff's alleged motivation to partner with 3rd Home.   Accordingly, the second sentence of ¶ 8 is denied.   Regarding the third sentence in ¶ 8, it is admitted that Plaintiff stood to benefit substantially more from its partnership with 3rd Home, than 3rd Home did from its partnership with Plaintiff; this of course is given to the fact that 3rd Home already has upwards of 5,000 educated Members in its luxury home exchange program.

9.      Admitted.

10.     Admitted.

11.     The allegations contained in ¶ 11 constitute a "cut and paste" of the provisions of the parties' agreement and apparently were set forth in that manner to perpetuate Plaintiff's claims.  Defendants deny the allegations in ¶ 11, as stated.

12.     Denied.

13.     Denied, as stated.  To the contrary, prior to ever launching the joint venture, the parties began to encounter obstacles and differences of opinion as to how it would proceed. These events led to the parties mutually executing an Amendment to the agreement to expand each party's rights to terminate that agreement.  Shortly thereafter, the obstacles that had earlier posed a problem became more evident, which resulted in 3rd Home then exercising its termination rights.

14.     Denied, as stated.  The joint venture was never actually launched and, therefore, the alleged improper actions of 3rd Home did not and could not compete with Plaintiff. Moreover, the agreement between the parties was to focus on fractional shares, and perhaps the listing of luxury homes but only for those individuals who were already 3rd Home Members. Any activities which 3rd Home committed following the execution of the agreement that concern brokerages and/or broker relationships is distinguishable from the activities that the joint venture would have performed had it been actually launched.

15.     Denied.

16.     Denied.

17.     Denied.

18.     Denied.

19.     Denied.

20.     Denied.

21.     Prior to entering its agreement with LightBox, 3rd Home had a history of partnering with preferred brokers through preferred brokerage partnerships.  The goals of such arrangements included sponsorship advertising opportunities with major real estate brokers in certain geographic areas.  LightBox was fully aware that 3rd Home had a history of such arrangements and/or partnerships.  In fact, the agreement executed by the parties expressly stated that 3rd Home would continue to be responsible for all relationships with its affiliates and that in the interest of maintaining those relationships, and that 3rd Home "*retains the right to determine that certain affiliate properties may not be able to be sold through [the joint venture]."* Accordingly, the contrary allegations contained in ¶ 21 of the Amended Complaint are categorically denied.

22.     3rd Home retained control of the URL/website pursuant to the expressed terms of the agreement between the parties, which was terminated on March 8, 2016.  The factual assertions set forth in ¶ 22 are incorrect in parts, and correct in other parts.  However, all of those events occurred after the joint venture was terminated and after this lawsuit was filed.  LightBox asserted in this lawsuit that the joint venture had been terminated and, therefore, the nature of the website thereafter is immaterial.

23.     Denied.

24.     Defendants incorporate by reference their response to ¶ 22, above.

25.     LightBox's counsel wrote a letter to 3rd Home's counsel regarding the website following the unsuccessful mediation.  All contrary and remaining allegations regarding this issue are denied.

26.     Denied.

27.     Denied.

28.     Defendants are without sufficient information to admit or deny the allegations in ¶ 28 and, therefore, they are denied.

29.     Defendants incorporate by reference their responses to earlier paragraphs.

30.     Denied.

31.     Denied.

32.     Denied.

33.     Defendants incorporate by reference their responses to earlier paragraphs.

34.     Denied.

35.     Denied.

36.     Denied.

37.     Denied.

38.     Defendants incorporate by reference their responses to earlier paragraphs.

39.     Denied.

40.     Denied.

41.     Denied.

42.     Denied.

43.     Defendants incorporate by reference their responses to earlier paragraphs.

44.     Denied.

45.     Denied.

46.     Defendants assert that the agreement was terminated by 3rd Home and, thereafter, ratified by LightBox via the concessions made in its Complaint and in its Amended Complaint. Accordingly, all of the parties are relieved of any future performance obligations save and except for those associated with the dissolution and wrapping up of the joint venture.  Any contrary allegations in ¶ 46 are denied.

47.    Defendants incorporate by reference their responses to earlier paragraphs.

48.    Denied.

49.    Denied.

50.    Denied.

51.    It is admitted that LightBox has the right to terminate the agreement, as well.

52.    It is admitted that the agreement is terminated.

53.    Defendants incorporate by reference their responses to earlier paragraphs.

54.    Denied.

55.    Denied.

56.    Denied.

57.    Denied.

58.    Defendants incorporate by reference their responses to earlier paragraphs.

59.    Admitted.

60.    The obligations of the parties were enumerated in the agreement, as amended.  All contrary and remaining allegations in ¶ 60 are denied.

61.    Denied.

62.    Denied.

63.    Denied.

64.    Defendants incorporate by reference their responses to earlier paragraphs.

65.    At all times relevant Mr. Shealy was an authorized representative of 3rd Home, holding the position of Chairman.  All actions taken by Mr. Shealy were conducted in that capacity (and not individually).  He acted in good faith and in the best interest of 3rd Home.  All contrary and remaining allegations in ¶ 65 are denied.

66.    Denied.

67.    Denied.

68.    Denied.

69.    Any allegation in the Complaint that has not previously been admitted or denied is here and now denied.

## ADDITIONAL/AFFIRMATIVE DEFENSES

1.    <u>Rule 12(b)(1)(2)</u>:    This Court lacks jurisdiction under 28 U.S.C. §1332(a).

2.    <u>Rule 12(b)(2)</u>:    This Court is not an appropriate venue under 28 U.S.C. §1391(b)(2).

3.    <u>Rule 12(b)(6)</u>:    Plaintiff's Complaint fails to state a claim upon which relief can be granted.

4.    <u>Rule 8(c)(1)</u>:    The joint venture never launched and, therefore, there is a lack of (or failure of) consideration.  Thus, Plaintiff should not be entitled to a windfall.

## COUNTERCLAIM

### THE NATURE OF THE COUNTERCLAIM

3rd Home is the owner of registered trademarks for "*3rd Home*" (Registration Nos. 3905513 and 3905514). While 3rd Home entered into a joint venture with the Plaintiff/Counter-Defendant ["LightBox"], the ownership and control of all of 3rd Home's proprietary assets, including its trademarks, expressly remained the property of 3rd Home.

Notwithstanding, LightBox has improperly used and/or misappropriated 3rd Home's trademarks. That unauthorized use violates federal law and the agreement. Moreover, those actions were done at the direction of LightBox's principal owner/manager, Andrew "Andy" Ellner, rendering him personally liable for LightBox's tortious acts and also constitute aiding and abetting LightBox's breach of its obligations to 3rd Home.

### THE PARTIES

1.      3rd Home (Counter-Plaintiff in this pleading) is a limited liability company, organized and existing under the laws of the Cayman Islands, with its principal place of business in Brentwood, Tennessee.

2.      Plaintiff/Counter-Defendant ["LightBox"] is a limited liability company, organized and existing under the laws of the State of New York with its principal place of business in New York, New York.

# BACKGROUND

### 3rd Home's Proprietary Assets

3.      On January 11, 2011, 3rd Home obtained registrations for its name/logo from the United States Patent and Trademark Office, said registrations designated as Registration Nos. 3905513 and 3905514 [collectively, the "Trademarks"].

4.      On July 13, 2015, 3rd Home and LightBox entered into that agreement attached to LightBox's Amended Complaint as Exhibit A ["the Agreement].

5.      The Agreement stated expressly that 3rd Home retained all rights regarding its name and/or mark.  The relevant language contained in the documents states as follows:

> *All 3rd Home names, marks and other proprietary assets that may be used in conjunction with the marketing of this product will remain the exclusive property of 3rd Home at all times during the term and after.*

6.      The Agreement provided that it was a "temporary interim agreement" and that 3rd Home could terminate it at any time prior to expiration for any "unanticipated issues."

7.      On December 4, 2015, the Agreement was amended, per Exhibit B to LightBox's Amended Complaint.  The Amendment did not affect or relate to the above-referenced clause relating to 3rd Home's names, marks and other proprietary assets.  The Amendment executed by the parties also provided both 3rd Home and LightBox with termination rights.

8.      3rd Home elected to exercise its termination rights, as provided in the Agreement and as expanded in the Amendment to the Agreement.  By termination letter dated March 8, 2016, 3rd Home provided notice to LightBox of its election to terminate (See **Exhibits A and B**).

9.      LightBox filed this lawsuit 24 days thereafter, and included two Causes of Action specifically confirming that a termination had occurred, stating that LightBox was "*choosing to exercise its right to terminate for cause pursuant to Amendment 15(d).*"  LightBox further asked

for a declaration from this Court that the Agreement had in fact been "*validly terminated for cause by LightBox.*"

10.    Regardless of which party terminated the Agreement, the document reflects that <u>during</u> the Agreement and <u>thereafter</u>, that all rights in 3rd Home's names and marks remain 3rd Home's intellectual property, and that any rights provided to LightBox in the Agreement do not survive and are terminated along with the Agreement.

11.    Notwithstanding 3rd Home's retention of its names and marks, LightBox began using 3rd Home's name and trademarks following the filing of this lawsuit and in particular, following the unsuccessful mediation, which was conducted on June 19, 2016.

12.    LightBox has used and promoted one or both of the following web addresses:

- 3rdhomerealestate.com; and/or
- 3rdhomerealty.com.

13.    Additionally, LightBox has registered and hosts email services through:

- Thirdhomerealestate.com.

14.    Additionally, LightBox, independently and/or in concert with its principal owner (Andrew "Andy" Ellner), has used 3rd Home's name and trademarks in connection with one or both of the following email addresses:

- Andy@3rdhomerealestate.com; and/or
- Andy@thirdhomerealestate.com.

15.    The various web addresses and/or email addresses set forth in ¶¶ 12, 13 and 14, above, are collectively referred to hereinafter as "the Domain Names."

16.    Additionally, LightBox, independently and/or in concert with its principal owner (Andrew "Andy" Ellner), has represented to third parties, including individuals and/or

companies that have had business relationships with 3rd Home for several years, that the partnership and/or joint venture of LightBox and 3rd Home continues.  These representations have been made by LightBox and Mr. Ellner in recent weeks, notwithstanding that 3rd Home terminated the joint venture nearly six (6) months earlier, and notwithstanding that LightBox in this lawsuit likewise asserted that the venture had been terminated.   Attached hereto as **Collective Exhibit C** are copies of emails sent by Mr. Ellner to these third parties reflecting that he was still working with 3rd Home's Chairman, Wade Shealy, on joint venture matters (which factually was incorrect).

17.    The actions of LightBox and its owner, Andrew "Andy" Ellner, in connection with the use of the marks and the Domain Names has caused or is likely to and will confuse the public, because it falsely suggests that LightBox's website is operated, sponsored or authorized by 3rd Home, which it is not.

18.    By letter dated July 8, 2016, 3rd Home gave notice to LightBox and its owner, Mr. Ellner, that the above-referenced use of 3rd Home's marks and Domain Names was unauthorized and inappropriate, and should be stopped  (See **Exhibit D**).

## CAUSES OF ACTION

## I.
### Violation of the Federal Trademark Act, the Lanham Act, and related State Laws

19.     The allegations set forth in ¶¶ 1 – 18 in this Counterclaim are incorporated herein by reference.

20.     The actions of LightBox and its owner, Andrew "Andy" Ellner, constitute infringement and delusion of 3rd Home's marks and unfair competition in violation of the Federal Trademark Act, the Lanham Act, at 15 U.S.C. § 1051, *et seq.,* and related state laws.  To the extent such unauthorized use is resurrected, then 3rd Home is also entitled to injunctive relief in addition to monetary damages and legal fees.

## II.
### Uniform Domain Name Resolution Policy and United States Trademark Act

21.     The allegations set forth in ¶¶  1 – 20 in this Counterclaim, above are incorporated herein by reference.

22.     LightBox's willful and prior use of 3rd Home's Domain Names was improper and unlawful under the Uniform Domain Name Dispute Resolution Policy approved by the Internet Corporation for Assigned Names and Numbers ["ICAAN"] and under the United States Trademark Act, including the Anticybersquatting Consumer Protection Act, at 15 U.S.C. § 1125(d).   Accordingly, 3rd Home is entitled to monetary damages, legal fees and statutory damages of up to $100,000 per domain name, for prior use and for damages, and/or injunctive relief for any continued use.

## PRAYER FOR RELIEF

**WHEREFORE**, 3rd Home demands that Judgment be entered in its favor and against LightBox and its principal owner, Andrew "Andy" Ellner, pursuant to the Third-Party Complaint against him, as follows:

1.      On the first Cause of Action, Ordering LightBox to pay monetary damages in an amount to be proven at trial, plus associated interest and the fees and costs incurred in connection with this action;

2.      On the second Cause of Action, Ordering LightBox to pay monetary damages in an amount to be proven at trial, plus associated interest and the fees and costs incurred in connection with this action; and also, statutory damages of up to $100,000 per domain name; and

3.      For injunctive relief, where appropriate, and for the fees and costs incurred in connection with this action, and

4.      Ordering such other and further relief for 3rd Home and against LightBox and Mr. Ellner as the Court may deem just and proper.

## THIRD-PARTY COMPLAINT

### THE NATURE OF THE ACTION

The Defendant, 3rd Home Limited ["3rd Home"] asserts this as its Third-Party Complaint against Andrew "Andy" Ellner, for the same claims included in its Counterclaim against Mr. Ellner's company (LightBox).  In support of its claims, 3rd Home states as follows:

### THE PARTIES

1.     3rd Home is a limited liability company organized and existing pursuant to the laws of the Cayman Islands, with its principal place of business in Brentwood, Tennessee.

2.     Andrew "Andy" Ellner ["Mr. Ellner"] is a resident of the State of New York.

### JURISDICTION AND VENUE

3.     Jurisdiction in this Court is proper under 28 U.S.C. § 1332(a) because 3rd Home is a citizen of the State of Tennessee and/or the Cayman Islands, Mr. Ellner is a citizen of the State of New York, and the mounting controversy seeks $75,000.

4.     Venue in this Court is proper under 28 U.S.C. § 1391(b)(2) because all or substantially all of the events or omissions giving rise to this third-party claim were committed by Mr. Ellner in the State of New York.

## BACKGROUND

#### A.      3rd Home's Proprietary Assets

5.      On January 11, 2011, 3rd Home obtained registrations for its name/logo from the United States Patent and Trademark Office, said registrations designated as Registration Nos. 3905513 and 3905514 [collectively, the "Trademarks"].

#### B.      The Joint Venture

6.      On July 13, 2015, 3rd Home and LightBox entered into that agreement attached to LightBox's Amended Complaint as Exhibit A ["the Agreement].

7.      The Agreement stated expressly that 3rd Home retained all rights regarding its name and/or mark.  The relevant language contained in the documents states as follows:

> *All 3rd Home names, marks and other proprietary assets that may be used in conjunction with the marketing of this product will remain the exclusive property of 3rd Home at all times during the term and after.*

8.      On December 4, 2015, the Agreement was amended, per Exhibit B to LightBox's Amended Complaint.  The Amendment executed by the parties also provided both 3rd Home and LightBox with termination rights.   The Amendment did not affect or relate to the above-referenced clause relating to 3rd Home's names, marks and other proprietary assets.

9.      The Agreement provided that it was a "temporary interim agreement" and that 3rd Home could terminate it at any time prior to expiration for any "unanticipated issues."

10.      3rd Home elected to exercise its termination rights, as provided in the Agreement and as expanded in the Amendment to the Agreement.  By termination letter dated March 8, 2016, 3rd Home provided notice to LightBox of its election to terminate (See **Exhibits A and B**).

11.      LightBox filed this lawsuit 24 days thereafter, and included two Causes of Action specifically confirming that a termination had occurred, stating that LightBox was "*choosing to*

*exercise its right to terminate for cause pursuant to Amendment 15(d).*"  LightBox further asked

for a declaration from this Court that the Agreement had in fact been "*validly terminated for*

*cause by LightBox.*"

12.    Regardless of which party terminated the Agreement, the document reflects that

<u>during</u> the Agreement and <u>thereafter</u>, that all rights in 3rd Home's names and marks remain 3rd

Home's intellectual property, and that any rights provided to LightBox in the Agreement do not

survive and are terminated along with the Agreement.


C.    <u>The Unauthorized Use of 3rd Home's Names and Marks</u>

13.    Notwithstanding 3rd Home's retention of its names and marks, LightBox began

using 3rd Home's name and trademarks following the filing of this lawsuit and in particular,

following the unsuccessful mediation, which was conducted on June 19, 2016.

14.    LightBox has used and promoted one or both of the following addresses:

- 3rdhomerealestate.com; and/or
- 3rdhomerealty.com.


15.    Additionally, LightBox has registered and hosts email services through:

- Thirdhomerealestate.com.


16.    Additionally, LightBox, independently and/or in concert with its principal owner

(Andrew "Andy" Ellner), has used 3rd Home's name and trademarks in connection with one or

both of the following email addresses:

- Andy@3rdhomerealestate.com; and/or
- Andy@thirdhomerealestate.com.

17.     The various web addresses and/or email addresses set forth in ¶¶ 12, 13 and 14, above, are collectively referred to hereinafter as "the Domain Names."

18.     Additionally, LightBox, independently and/or in concert with its principal owner (Andrew "Andy" Ellner), has represented to third parties, including individuals and/or companies that have had business relationships with 3rd Home for several years, that the partnership and/or joint venture of LightBox and 3rd Home continues.  These representations have been made by LightBox and Mr. Ellner in recent weeks, notwithstanding that 3rd Home terminated the joint venture nearly six (6) months earlier, and notwithstanding that LightBox in this lawsuit likewise asserted that the venture had been terminated.  Attached hereto as **Collective Exhibit C** are copies of emails sent by Mr. Ellner to these third parties reflecting that he was still working with 3rd Home's Chairman, Wade Shealy, on joint venture matters (which factually was incorrect).

19.     The actions of LightBox and its owner, Andrew "Andy" Ellner, in connection with the use of the marks and the Domain Names has caused or is likely to and will confuse the public, because it falsely suggests that LightBox's website is operated, sponsored or authorized by 3rd Home, which it is not.

20.     By letter dated July 8, 2016, 3rd Home gave notice to LightBox and its owner, Mr. Ellner, that the above-referenced use of 3rd Home's marks and Domain Names was unauthorized and inappropriate, and should be stopped  (See **Exhibit D**).

## CAUSES OF ACTION

### I.
### Violation of the Federal Trademark Act, the Lanham Act, and related State Laws

21.     The allegations set forth in ¶¶ 1 – 20 in this Counterclaim are incorporated herein by reference.

22.     The actions of LightBox and its owner, Andrew "Andy" Ellner, constitute infringement and delusion of 3rd Home's marks and unfair competition in violation of the Federal Trademark Act, the Lanham Act, at 15 U.S.C. § 1051, *et seq.,* and related state laws.  To the extent such unauthorized use is resurrected, then 3rd Home is also entitled to injunctive relief in addition to monetary damages and legal fees.

### II.
### Uniform Domain Name Resolution Policy and United States Trademark Act

23.     The allegations set forth in ¶¶  1 – 22 in this Counterclaim, above are incorporated herein by reference.

24.     LightBox's willful and prior use of 3rd Home's Domain Names was improper and unlawful under the Uniform Domain Name Dispute Resolution Policy approved by the Internet Corporation for Assigned Names and Numbers ["ICAAN"] and under the United States Trademark Act, including the Anticybersquatting Consumer Protection Act, at 15 U.S.C. § 1125(d).   Accordingly, 3rd Home is entitled to monetary damages, legal fees and statutory damages of up to $100,000 per domain name, for prior use and for damages, and/or injunctive relief for any continued use.

## PRAYER FOR RELIEF

**WHEREFORE**, 3rd Home demands that Judgment be entered in its favor and against LightBox and its principal owner, Andrew "Andy" Ellner, pursuant to the Third-Party Complaint against him, as follows:

1.      On the first Cause of Action, Ordering LightBox to pay monetary damages in an amount to be proven at trial, plus associated interest and the fees and costs incurred in connection with this action;

2.      On the second Cause of Action, Ordering LightBox to pay monetary damages in an amount to be proven at trial, plus associated interest and the fees and costs incurred in connection with this action; and also, statutory damages of up to $100,000 per domain name; and

3.      For injunctive relief, where appropriate, and for the fees and costs incurred in connection with this action, and

4.      Ordering such other and further relief for 3rd Home and against LightBox and Mr. Ellner as the Court may deem just and proper.

Respectfully submitted,

**KASOWITZ BENSON TORRES &
FRIEDMAN LLP**
By: */s/Thomas Kelly*
       Thomas Kelly
1633 Broadway
New York, NY  10019
*Co-Counsel for Defendants/Counter-Plaintiffs and
Third-Party Plaintiffs*


**EVANS, JONES & REYNOLDS, P.C.**
By: */s/Phillip Byron Jones*
       Phillip Byron Jones
401 Commerce Street, Suite 710
Nashville, TN  37219
*Co-Counsel for Defendants/Counter-Plaintiffs and
Third-Party Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been sent as follows on this the 1st day of September, 2016, to:

| Addressee | Method(s) of Service |
|---|---|
| **Richard J.J. Scarola**<br>**Alexander Zubatov**<br>Scarola Malone & Zubatov LLP<br>1700 Broadway<br>41st Floor<br>New York, NY  10019<br>*Attorneys for Plaintiff/Counter-Defendant and Third-Party Defendant* | ☒ Electronically via the Court's ECF System<br><br>☐ U.S. Postal Service (First-Class, Postage Prepaid)<br><br>☐ Email |

*/s/ Phillip Byron Jones*
Phillip Byron Jones

838803.010

-22-