UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LIGHTBOX VENTURES, LLC,<br><br>       Plaintiff/Counterclaim Defendant,<br><br>-against-<br><br>3RD HOME LIMITED and WADE SHEALY,<br><br>       Defendants/Counterclaim Plaintiffs and<br>       Third-Party Plaintiffs. | DEFENDANTS'<br><br>STATEMENT OF MATERIAL FACTS<br><br>IN CONNECTION WITH ITS<br><br>MOTION FOR<br>SUMMARY JUDGMENT<br>(AND TO BAR EXPERTS)<br><br>16-cv-02379 (DLC) |
| 3RD HOME LIMITED/WADE SHEALY,<br><br>       Third-Party Plaintiffs,<br><br>-against-<br><br>ANDREW ELLNER,<br><br>       Third-Party Defendant. | |

      Pursuant to Rule 56, Fed. R.C.V.P., and Local Rule 56.01, the Defendants submit that the following Material Facts are uncontested:

      1.      In 2009, the Defendant, E. Wade Shealy, Jr. ["Mr. Shealy"], was involved in the formation of 3rd Home, LLC, initially as a Georgia limited liability company ["3HL"]. **[Shealy Aff., ¶4, Doc. 40]**.

**RESPONSE:**

2. In 2009, 3HL established its website at www.3rdhome.com.  **[Shealy Aff., ¶5, Doc. 40]**.

**RESPONSE:**


3. In 2011, Mr. Shealy was involved in the formation of 3rd Home, Ltd., as a Cayman Islands-based company (with principal offices near Nashville, Tennessee) ["3HL"]. **[Shealy Aff., ¶4, Doc. 40]**.

**RESPONSE:**


4. Since January 11, 2011, 3HL has owned a trademark registration, issued by the United States Patent and Trademark Office for its names and related marks. **[Shealy Aff., ¶4, Doc. 40]**.

**RESPONSE:**


5. 3HL's website is a global site that allows its Members to exchange weeks in their luxury homes.  Once an individual becomes a Member of 3HL's property exchange program, and their property is determined to be eligible, they are then afforded the opportunity to spend days in a luxury home owned by another Member, in exchange for allowing other Members to stay in their home.  **[Shealy Aff., ¶5, Doc. 40]**.

**RESPONSE:**


6. As a 3HL Member, an owner of a home in Antigua, for example, may permit another Member to stay in his/her home for one week and in return, may stay in another Member's home in Vail, Colorado (for example) for one week.  These exchanges are facilitated

by the use of points or "keys," which is the currency used in the exchange program to reserve time in a given property.  **[Court Memorandum, Doc. 69, p. 5]**.

**RESPONSE:**


7. As of March 31, 2016, 3HL had at least 5,000 Members.  As of October 28, 2016, 3HL had approximately 6,500 owners (Members), who participate in 3HL's online exchange. **[Pl. Complaint, Doc. 1; and Court Memorandum, Doc. 69, p. 5]**.

**RESPONSE:**


8. 3HL obtains Members from referrals made to it by Brokers working in the luxury vacation home market in the United States and abroad.  **[Court Memorandum, Doc. 69, p. 5]**.

**RESPONSE:**


9. Andrew "Andy" Ellner ["Ellner"] is a former managing director at Lehman Brothers.  **[Ellner Depo., p. 4/4-21]**.

**RESPONSE:**


10. In 2008, Ellner formed LightBox Capital Management Company, LLC, otherwise known as LightBox Capital Management, LLC, as a "money management firm" with multiple funds for different investors, including hedge funds.  **[Ellner Depo., p. 13/9 – 14/13]**.

**RESPONSE:**

11. In June, 2015, Ellner formed another company known as LightBox Ventures, LLC ["LightBox"] **[Shealy Aff., ¶7, Doc. 40; and Ellner Depo., 18/8-13]**.

**RESPONSE:**


12. In June, 2015, Ellner contacted 3HL about the possibility of forming a joint venture in which LightBox's sales business would be promoted to 3HL Members via a link on 3HL's existing website. **[Court Memorandum, Doc. 69, p. 6]**.

**RESPONSE:**


13. At the time Ellner contacted 3HL about the possibility of forming a joint venture, neither Ellner, his wife, nor anyone employed by LightBox held a license as a Real Estate Realtor or Real Estate Broker. **[Jill Ellner Depo., p. 15/19-22]**.

**RESPONSE:**


14. In July 13, 2015, LightBox and 3HL entered into an agreement [hereinafter "the Joint Venture"]. **[Pl. Complaint, Exh. A; Pl. Amended Complaint, Exh. A; and Court Memorandum, Doc. 69, p. 6]**.

**RESPONSE:**


15. Prior to entering into the Joint Venture, Ellner had never owned an interest in a real estate company. **[Ellner Depo., p. 56/24 – 57/2]**.

**RESPONSE:**

16. Prior to the formation of the Joint Venture, Ellner's wife (Jill Ellner) had never owned an interest in a real estate company, worked for a real estate company as a W-2 employee, or worked for a real estate company as a 1099 Consultant.  **[Jill Ellner Depo., p. 13/7-16]**.

**RESPONSE:**


17. The stated purpose of the Joint Venture agreement was to "*establish a joint venture between the parties to create an online platform for the resale of vacation homes, fractional ownership properties and other properties eligible to be listed on $3^{rd}$home.com, which is to be linked to the existing 3rd Home site*."  **[Court Memorandum, Doc. 69, Section I, p. 6]**.

**RESPONSE:**


18. Among the obligations that LightBox agreed to perform for the Joint Venture included, its responsibility for "*managing any and all interactions with buyers and sellers and potential buyers and sellers, as well as all intermediaries required for any sale, including local real estate brokers, property management companies and local attorneys as needed.*"  **[Pl. Complaint, Exh. A, p. 1, Section 1(d); Court Memorandum, Doc. 69, p. 7]**.

**RESPONSE:**


19. At the time that LightBox entered into the Joint Venture agreement, neither Ellner, his wife, nor anyone employed by LightBox as a W-2 employee held a license as a Real Estate Realtor or Real Estate Broker. **[Jill Ellner Depo., p. 15/19-22]**.

**RESPONSE:**

20.   A section of the Joint Venture agreement titled "Termination" provided:

> <u>*This is a temporary interim agreement*</u> *to indicate the intent of the parties, and will remain in effect until July 13, 2017, or earlier if superseded by later agreement. If 3rd Home should desire to terminate because of unanticipated issues before July 13, 2017 then it will promptly reimburse LightBox for any unreimbursed costs of the technology build out. Additional terms regarding termination of this agreement and the rights and steps to terminate it are expected before August 31, 2015.*

**[Pl. Complaint, Exh. A; and Court Memorandum, Doc. 69, p. 8]**.  (Emphasis added.)

**RESPONSE:**


21.   The parties (LightBox and 3HL) did not sign a document reflecting "*additional terms regarding termination*" on or before the August 31, 2015 date mentioned in the earlier, Joint Venture, document.  **[Court Memorandum, Doc. 69, p. 8; Shealy Aff., ¶ 13, Doc. 40]**.

**RESPONSE:**


22.   LightBox obtained its license to transact business as a Real Estate Broker from the State of New York on August 27, 2015.  **[Jill Ellner Depo., p. 15/19-22]**.

**RESPONSE:**


23.   As of the fall of 2015, the parties had not yet determined the name by which the Joint Venture would operate. As of October 8, 2015, Ellner had narrowed his choices down to a list of four. **[Ellner email, 10/08/15, 10:35 a.m.]**.

**RESPONSE:**

24.     In December, 2015, the parties executed an amendment to the agreement [the "Amended Agreement"].  **[Pl. Complaint, Exh. B; and Court Memorandum, Doc. 69, p. 8]**.

**RESPONSE:**

25.     The Amended Agreement principally modified the Termination provision of the agreement.  **[Court Memorandum, Doc. 69, Section II, p. 8]**.

**RESPONSE:**

26.     The Amended Agreement also provided that the agreement shall last for a term of 30 months until July 1, 2018 unless terminated earlier.  It contained an automatic renewal term for periods following July 1, 2018 in the event certain conditions were met.  **[Court Memorandum, Doc. 69, Section II, p. 8]**.

**RESPONSE:**

27.     As of January 27, 2016, Ellner had yet to determine the mailing address that the Joint Venture would use.  **[Ellner email, 01/28/16; Shealy Depo., Exh. 23]**.

**RESPONSE:**

28.     As of January 27, 2016, Ellner had not yet procured a telephone number (800 or equivalent) for the Joint Venture. **[Ellner email, 01/28/16; Shealy Depo., Exh. 23]**.

**RESPONSE:**

29.     As of the date Lightbox filed suit, Ellner's wife, Jill Ellner, had never listed a property for sale; had never represented a seller in connection with the acquisition of real estate; and had never represented a buyer in connection with the acquisition of real estate.  **[Jill Ellner Depo., p. 23/1-6]**.

**RESPONSE:**

30.     As of the date Lightbox filed suit, Mrs. Ellner had not sought to have her New York Real Estate License granted licensing reciprocity in any other state.  **[Jill Ellner Depo., p. 23/13-16]**.

**RESPONSE:**

31.     The technology costs incurred in connection with the formation of the Joint Venture were not actually paid by Lightbox Ventures, LLC.  Instead, those costs were paid by Mr. Ellner's other company, Lightbox Capital Management, via electronic money transfers and Check Nos. 0626, 0627.  **[Money Transfer System, Transfer Reference No. 20150714,00001981; No. 20150826-00005190; and No. 20150917-00001958; Lightbox Capital Management, LLC Check Dated 12/16/15 (Check Nos. 0626 0627)]**.

**RESPONSE:**

32.     As of the date Lightbox filed suit, it did not have a bank account **[Scarola Sworn Stmt., ¶25; Supreme Court of New York, County of New York, Case No. 651324/2017]**.

**RESPONSE:**

33. As of the date Lightbox filed suit, it was insolvent **[Scarola Sworn Stmt., ¶26; Supreme Court of New York, County of New York, Case No. 651324/2017]**.

**RESPONSE:**


34. As of the date Lightbox filed suit, it was incapable of discharging its responsibilities or supporting its potential liabilities.  **[Scarola Sworn Stmt., ¶27; Supreme Court of New York, County of New York, Case No. 651324/2017].**

**RESPONSE:**


35. As of December 16, 2016, Mrs. Ellner had no knowledge as to whether her New York Real Estate License permits her to act as a Broker or Realtor in states other than New York. **[Jill Ellner Depo., p. 23/13-25]**.

**RESPONSE:**


36. As of December 16, 2016, Mrs. Ellner had no knowledge as to the real estate laws that are in place or may be in place outside the State of New York.  **[Jill Ellner Depo., p. 26/7-13; p. 32/10-13; and p. 32/17-20]**.

**RESPONSE:**


37. As of the date the Amended Agreement was signed, the partners in the Joint Venture had not come to an agreement as to the nature of the referral fees the Joint Venture wanted to receive from third parties for future referral agreements.  **[Ellner Depo., p. 186/14-19]**.

**RESPONSE:**

38. As of the date the Amended Agreement was signed, the Joint Venture had not determined the percentage or amount of commission that the Joint Venture would receive for sales in which the buyer and seller were both represented by a Realtor. **[Ellner Depo., p. 199/10-19]**.

**RESPONSE:**

39. As of the date the Amended Agreement was signed, the Joint Venture had not determined the percentage or amount of commission that the Joint Venture would receive for those scenarios in which there was a Realtor involved on both sides. **[Ellner Depo., p. 200/22 – 201/4; p. 204/2-21]**.

**RESPONSE:**

40. As of January 1, 2016, the Joint Venture's link had not been attached to 3HL's global website. **[Pl. Complaint]**.

**RESPONSE:**

41. After January 1, 2016, 3HL became concerned about various disagreements between the parties **[Shealy Aff., ¶19-22, Doc. 40]**.

**RESPONSE:**

42. 3HL later elected not to allow the Joint Venture's link to be attached to 3HL's global website. **[Shealy Aff., ¶19-22, Doc. 40; Pl. Complaint]**.

**RESPONSE:**

43. On March 31, 2016, LightBox filed its Complaint against these Defendants **[Pl. Complaint, Doc. 1]**.

**RESPONSE:**


44. Plaintiff contended in its March 31, 2016 lawsuit that because 3HL had failed or refused to allow the Joint Venture's link to launch, that 3HL was in breach. **[Pl. Complaint, ¶¶37, 38, Doc. 1]**.

**RESPONSE:**


45. Because of the facts mentioned in ¶¶ 37 and 38 of its original Complaint, Plaintiff advised the Court in Paragraph 39 of its March 31, 2016 lawsuit that it was "*choosing to exercise its right to terminate for cause pursuant to Amendment, Par. 15(d).*" **[Pl. Complaint, ¶39, Doc 39]**.

**RESPONSE:**


46. In the Plaintiff's later Amended Complaint, it asked for a declaration that the agreement "*may be validly terminated for cause by LightBox*". **[Pl. Amended Complaint, ¶¶49-52, Doc 46]**.

 **RESPONSE:**


47. Ellner represented to this Court on October 6, 2016, in a sworn statement that the Joint Venture had "*numerous brokerage sales listings on the website for properties worth more than $30 million...*" **[Ellner Aff., ¶5, p. 6 Doc. 60]**.

**RESPONSE:**

48. At the injunction hearing held by the Court on October 21, 2016, Ellner testified that by March, 2016, that there were approximately 18 foreign properties listed with a total value of approximately $31 million. **[Court Memorandum, Doc. 69, p. 13]**.

**RESPONSE:**

49. As of the time that LightBox filed its lawsuit against 3HL, it had procured only two <u>signed</u> listing agreements. **[Rencher Depo., p. 78/1 – 79/3, Exh. 3B, and 3C; Shealy Aff., ¶¶ 5-9; Exh. A-B]**.

**RESPONSE:**

50. One of the two signed listing agreements that LightBox procured prior to filing its lawsuit concerned property owned by Mr. Ellner and his wife. That contract is dated February 25, 2016. **[Rencher Depo., Exh. 3B]**

**RESPONSE:**

51. The property in the February 25, 2016 contract is a timeshare in Costa Rica. The listing price for such timeshares is less than $200,000. **[2nd Shealy Aff., ¶ 5-9; Exh. A; Rencher Depo., Exh. 3B]**.

**RESPONSE:**

52. The other signed listing agreement that was procured prior to filing this lawsuit was dated February 27, 2016. That listing agreement concerned property owned by Rafael Hessman. **[Rencher Depo., Exh. 3C]**

**RESPONSE:**

53. The property in the February 27, 2016 contract is a timeshare at the Highlands Ritz, in Aspen, Colorado. The listing price for such timeshares is less than $200,000. **[2nd Shealy Aff., ¶ 5-9; Exh. B; and Rencher Dep. Exh. 3C].**

**RESPONSE:**

54. LightBox's licensed Realtor, Jill Ellner, had no knowledge as of December 16, 2016 (the date she was deposed) of whether the Joint Venture had any exclusive listing agreements for real estate. **[Jill Ellner Depo., p. 40/1-19]**.

**RESPONSE:**

55. LightBox's Realtor, Jill Ellner, had no knowledge as of December 16, 2016 (the date she was deposed) whether LightBox's plan for the Joint Venture for revenue was to be generated through commissions or referrals, or some other mechanism. **[Jill Ellner Depo., p. 41/1-13]**.

**RESPONSE:**

56. LightBox's alleged valuation expert, *ANVIL*, valued LightBox's claim for lost sales by taking into account certain properties, including properties in Anguilla, Colorado, Mexico and Costa Rica. **[*ANVIL* Report and Depo.].**

**RESPONSE:**

57. LightBox's in house Real Estate Agent, Jill Ellner, testified that as of December 16, 2016, she had no knowledge as to whether any of the properties referenced by ANVIL were currently listed for sale.  **[Jill Ellner Depo., p. 25/11 – 27/15]**.

**RESPONSE:**

> */s/ Phillip Byron Jones*
> **Phillip Byron Jones** (BPR 14125)
> EVANS, JONES & REYNOLDS, P.C.
> 401 Commerce Street, Suite 710
> Nashville, TN  37219
> Telephone: (615) 259-4685/Fax: (615) 256-4448
> Email: Pjones@ejrlaw.com
> *Co-Counsel for Defendants/Counter-Plaintiff and Third-Party Plaintiff*

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing has been sent as follows on this the 13th day of June, 2017, to:

| Addressee | Method(s) of Service |
|---|---|
| /s/ Brem Modolvsky<br>**Brem Modolvsky**<br>Brem Modolvsky, LLC<br>411 Lafayette Street, 6th Floor<br>New York, NY  10003<br>212-563-3370 ph.<br>brem@bremlaw.com<br>*Attorneys for Plaintiff/Counter-Defendant* | ☒   Electronically via the Court's ECF System<br><br>☐   U.S. Postal Service (First-Class, Postage Prepaid)<br><br>☐   Email |

                                */s/ Phillip Byron Jones*
                                Phillip Byron Jones

838803.026