------------------------------------------------------------- x

LIGHTBOX VENTURES, LLC,

       *Plaintiff*,

-against-

3RD HOME LIMITED and WADE SHEALY,

       *Defendants.*

------------------------------------------------------------- x

3RD HOME LIMITED and WADE SHEALY,

       *Counterclaim Plaintiffs and Third-Party Plaintiffs*,

-against-

ANDREW ELLNER,

       *Third-Party Defendant.*

------------------------------------------------------------- x

16-cv-02379 (DLC)

# REPLY IN FURTHER SUPPORT OF PLAINTIFF'S APPLICATION FOR ATTORNEYS' FEES AND COSTS

BREM MOLDOVSKY, L.L.C.
411 Lafayette Street, 6th Floor
New York, New York 10003
(212) 563-3370

*Attorney for Plaintiff and Third-Party / Counterclaim Defendants*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................ii
SUMMARY OF REPLY.................................................................................................... 1
REPLY ............................................................................................................................... 2
I.    THE 'LODESTAR' MECHANISM GOVERNS THIS APPLICATION...........................2
    A. Defendants Make No Specific Objection To The
       Hourly Rates Sought Or To The Time Charges Incurred .....................................................3
    B. Defendants Propose Improper Modifications To the Lodestar Amount..............................4
         1) Defendants' Discussion Of Their Own Fees And Expenses Is Misplaced..............5
         2) 3rd Home Misstates The Scope Of The Forensic Discovery Dispute ......................5
         3) Defendants' Complaints About Invoices Are Misplaced ........................................6
         4) Disputes Between Plaintiff And Its Counsel, And
            The Nature Of Plaintiff's Fee Arrangements, Are Immaterial ................................7
         5) Third Home's Claims For Offsets May Not Be Considered...................................9
    C. Defendants Concede The Amount Of Discovia's Fees And Plaintiff's Costs...................10
CONCLUSION................................................................................................................. 10

# TABLE OF AUTHORITIES

Case Law

Alicea v. City of New York,
   2017 WL 3412100 (S.D.N.Y. Aug. 8, 2017) ............................................................. 5

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,
   522 F.3d 182 (2d Cir. 2008) ................................................................................. 2, 4

Bergerson v. New York State Office of Mental Health,
   652 F.3d 277 (2d Cir. 2011) ...................................................................................... 2

Bowne v. Ambase,
   161 F.R.D. 258 (S.D.N.Y. 1995) ............................................................................... 2

Burlington v. Dague,
   505 U.S. 557, 112 S.Ct. 2638 (1992) ........................................................................ 9

Fink v. City of New York,
   154 F. Supp.2d 403 (E.D.N.Y. 2001) ....................................................................... 9

Grand Street Realty, LLC v. McCord,
   2005 WL 2436214 (E.D.N.Y. Sept. 30, 2005) ......................................................... 3

Hensley v. Echkerhart,
   461 U.S. 424, 103 S. Ct. 1933 (1983) ....................................................................... 3

Johnson v. New York City Transit Auth.,
   823 F.2d 31 (2d Cir. 1987) ........................................................................................ 5

Lenihan v. City of New York,
   640 F. Supp. 822 (S.D.N.Y. 1986) ............................................................................ 7

Lunday v. City of Albany,
   42 F.3d 131 (2d Cir. 1994) ........................................................................................ 8

Motown Record Co., L.P. v. Motown Beverage Co. of Ohio,
   2001 WL 262587 (S.D.N.Y. Mar. 14, 2001) ............................................................ 3

New York State Assoc. for Retarded Children, Inc. v. Carey,
   711 F.2d 1136 (2d Cir. 1983) .................................................................................... 7

Nimkoff Rosenfeld & Schechter LLP v. RKO Props., Ltd.,
   2011 WL 8955840 (S.D.N.Y. April 7, 2011) ........................................................... 2

Schliefer v. Berns,
   2017 WL 4011239 (E.D.N.Y. Sept. 11, 2017) ......................................................... 3

Underdog Trucking LLC v. Verizon Services, Corp.,
   276 F.R.D. 105 (S.D.N.Y. 2011) ............................................................................... 2

United States Football League v. National Football League,
   887 F.2d 408 (2d Cir. 1989) ...................................................................................... 5

Rules

Fed. R. Civ. P. 1 ............................................................................................................... 10

Plaintiff Lightbox Ventures, LLC ("Lightbox") and Counterclaim / Third-Party Defendants Lightbox and Andrew Ellner ("Ellner") submit this reply in further support of their application to recover attorney's fees and costs in connection with discovery abuses of the Defendant (3rd Home") and its CEO, Defendant Wade Shealy ("Shealy"), as set forth in the Court's November 15, 2017, Opinion and Order (Doc. # 152).[1]

## SUMMARY OF REPLY

Defendants' reply does not address the factors and legal considerations germane to this application: (1) the hours spent by Plaintiff's counsel dealing with Defendants' unjustified refusal to produce documents, and with the analysis of those documents once produced by the forensic vendor Discovia, as well as a presentation of those documents to the Court, (2) the reasonableness of those hours and the tasks performed therein, and (3) the market rate for such legal services in New York County. Instead, Defendants meander through a series of irrelevant issues, such as their own legal fees, whether they will prevail on the merits of the litigation, the role of another lawyer whose fees are not sought in this application, and so forth. They again misstate the facts leading to this application in order to suggest that Plaintiff's requested fees are excessive, but they never directly challenge the accuracy or necessity of the time records presented, or offer any alternative calculation or methodology for the Court to consider. Accordingly, Plaintiff's application should be granted.

---

[1] For convenience, this memorandum uses the terms "Plaintiff" and "Lightbox," and separately the terms "Defendants" and "3rd Home," to refer generally to the parties on each side of this litigation.

**REPLY**

I. THE 'LODESTAR' MECHANISM GOVERNS THIS APPLICATION

Second Circuit case law on the proper means of determining an attorneys' fee award is extensive. The essential rule is this: "Attorneys' fees are awarded by determining a presumptively reasonable fee, reached by multiplying a reasonable hourly rate by the number of reasonably expended hours." Bergerson v. New York State Office of Mental Health, 652 F.3d 277, 289 (2d Cir. 2011). The Second Circuit adopted this "presumptively reasonable fee" approach in its 2008 Arbor Hill decision, after undertaking a detailed analysis of the history of attorneys' fee jurisprudence. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 186-93 (2d Cir. 2008). Although Defendants cite no law whatsoever in their papers, they do not object or propose an alternative to this "lodestar" method.

Although fee shifting arises most often by remedial statute, Plaintiff's opening declaration notes that the "lodestar" method is appropriate for Rule 37 applications such as the one at bar. E.g., Underdog Trucking LLC v. Verizon Services, Corp., 276 F.R.D. 105, 108 (S.D.N.Y. 2011) (citing cases); Bowne v. Ambase, 161 F.R.D. 258 (S.D.N.Y. 1995). The lodestar approach is also used in determining sanctions under other rules and statutory provisions. E.g., Nimkoff Rosenfeld & Schechter LLP v. RKO Props., Ltd., 2011 WL 8955840, at * (S.D.N.Y. April 7, 2011) (report and recommendation assessing Rule 11 attorneys fees for jurisdictional discovery abuses); Grand Street Realty, LLC v. McCord, 2005 WL 2436214, at * 12 E.D.N.Y. Sept. 30, 2005) (affirming Bankruptcy Court sanction under 11 U.S.C. § 105(a)); Motown Record Co., L.P. v. Motown Beverage Co. of Ohio, 2001 WL 262587, at *1 (S.D.N.Y. Mar. 14, 2001) (using lodestar to calculate sanctions "upon a finding of contempt"), aff'd as modified, 28 Fed. App. 107 (2d Cir. 2002). Thus, it is the correct approach here.

### A. Defendants Make No Specific Objection To The Hourly Rates Sought Or To The Time Charges Incurred

The lodestar method does not permit recovery for attorney time and expense that is "excessive, redundant, or otherwise unnecessary . . . ." Hensley v. Echkerhart, 461 U.S. 424, 434, 103 S. Ct. 1933, 1939-40 (1983). The primary check against excessive compensation is a challenge made by specific reference to those tasks and the time claimed to be unnecessary, so that the district court can address any objections with particularity. For example, the court in Schliefer v. Berns, 2017 WL 4011239, at *3 (E.D.N.Y. Sept. 11, 2017) (copyright infringement) stated that "3.5 hours conducting a Preliminary Case and Pleading Review" was excessive "when the complaint was only seven pages" and that 1.2 hours of time for "Court Correspondence" was excessive where the only correspondence was "a barely one-page letter asking the Court to adjourn the initial status conference."

Defendants do not adopt this approach or direct the Court to any particular activities or time entries. Instead, they make sweeping, generalized statements. For example: that Discovia was able to provide "detailed charts" of their withheld e-mails (Doc. # 166 at 7) to suggest that locating and then opening, reading, annotating and categorizing many of the thousands of documents shown on those charts, as well as the time needed to compare them to Defendants' production, record and organize the results, and so forth (all detailed in Plaintiff's application), was somehow unnecessary. But they do not explain how that could be, and forget that they insisted that Plaintiff prove those omissions to them (all explained in the underlying application). Similarly, Defendants offer a generalized complaint about the time incurred by SMZ to prepare its affidavits submitted in connection with this motion, again with no explanation or specifics. (Id. at 4, n. 2.) Their objections ring hollow because they lack reference to any specific time

3

entry or task, or a substantive statement that the work done did not relate to or was not caused by their sanctionable conduct.

3rd Home also does not claim that the hourly rates charged by the two law firms in question are out of line with the rates customarily charged by New York attorneys with similar backgrounds and experience, or for paralegal or law clerk time, including the time incurred by Mr. Ellner is that capacity.[2] Thus, they concede the reasonableness of such rates, as they must.

      B.      <u>Defendants Propose Improper Modifications To the Lodestar Amount</u>

The Court may adjust the lodestar amount by taking into account the "case-specific variables" that the many Circuit Court of Appeals have identified, sometimes called the "<u>Johnson</u> factors." <u>See</u> <u>generally</u>, <u>Arbor Hill</u>, <u>supra</u>, at n.3. In the case of a sanction, for example, the lodestar may be modified by taking "into account various mitigating factors bearing on the degree of sanction that is warranted," such as the party's ability to pay (which Defendants do not raise). <u>Johnson v. New York City Transit Auth.</u>, 823 F.2d 31, 32-33 (2d Cir. 1987) (Rule 11 sanction). There is, however, a strong presumption that the lodestar fee is reasonable; therefore, the party seeking departure bears the burden of establishing that an adjustment is necessary. <u>E.g.</u>, <u>United States Football League v. National Football League</u>, 887 F.2d 408, 413 (2d Cir. 1989).

Most of these <u>Johnson</u> factors are not implicated by the Rule 37 sanction at bar. Principally, this is because no one should incur the costs of another's sanctionable conduct, since no litigant may legitimately impose such costs on another. Thus, Defendants offer no legitimate basis for modifying the lodestar amount. Instead, they raise a number of issues that are either

---

[2] Defendants delve into the role of Jack Olivo, Esq., another attorney who assisted Plaintiff, but since no compensation is sought for Mr. Olivo's time or involvement, that exercise is a journey without a destination.

4

immaterial to the lodestar methodology, or that amount to a collateral attack on the underlying Order imposing sanctions (Doc. # 152). These are now discussed.

1) <u>Defendants' Discussion Of Their Own Fees And Expenses Is Misplaced</u>

Defendants claim that their fees in this matter total $182,919.01. (Doc. # 166 at 2, 6.) Their fees, however, are not relevant to the calculation of Plaintiff's costs and expenses. The lodestar calculation involves "the product of a [recipient's] reasonable hourly rate and the reasonable number of hours required by the case." <u>Alicea v. City of New York</u>, 2017 WL 3412100, at *3 (S.D.N.Y. Aug. 8, 2017). The unrelated legal fees of the party having to pay the sanction do not enter the equation. Nor would they reflect the reasonableness of the fees that the victim suffered, even if all else were equal: it takes greater effort to clean spilled milk than it does to spill it in the first place. This is particularly true here, because Defendants should have provided the needed discovery in the first instance and avoided the expense of forensic examination and electronic discovery.

The fact that counsel in New York City may be more expensive than elsewhere is reflected in the lodestar's reasonable rate determination. The fact that Defendants' drove up the cost of litigation by refusing to produce documents is the very basis for the fee award. Defendants may not contest either fact by pointing to their own legal fees or to the cost of traveling to the forum where the matter is pending. Further, even if their fees and expenses bore some relation to Plaintiff's, because 3rd Home's counsel did not provide any billing or fee arrangement information, this information is unsubstantiated and even less relevant. Defendants, therefore, should not make complaints (dissected below) about Lightbox's fee arrangements.

2) <u>3rd Home Misstates The Scope Of The Forensic Discovery Dispute</u>

In addition, 3rd Home repeats the argument made in opposing the underlying application for sanctions: that their wrongful conduct was limited, that they complied with the Court's

5

orders, that they consented to Discovia, etc. In particular, they argue that Plaintiff incurred "very little legal services" because on November 1, 2106, 3rd Home did not oppose Plaintiff's "motion for e-discovery." (Doc. #166 at 2, referring to Doc. # 72.) Of course, the underlying dispute began months earlier with Doc. # 49, which was opposed, as were the follow up letter motions giving rise to a telephone conference and further orders, as set forth in Plaintiff's underlying application (Doc. # 142 at 2-3). By the time Defendants' gave in (Doc. #72) the order imposing the forensic examination (Doc. # 75) was about to be or had already been signed.

Nor did Defendants somehow win a motion germane to this issue, as they suggest, referring to the Court's December 20, 2016, Order (Doc. #90) denying Plaintiff's letter motion to compel production of documents called for in Plaintiff's Second Document Requests. (See Doc. # 166 at 2.) That Order came nearly eight weeks after the forensic examination had been imposed by the Court, and did not limit the examination. The Court did not indicate Defendants' compliance with its discovery obligations or "rule in favor of 3rd Home" in any way related to the application at bar. It simply held that "plaintiff has not shown that [certain] documents were not already produced to it." (Doc. # 90.)

Similarly, the fact that this matter was stayed for some months while new counsel got up to speed does not mean that "very little" legal services were given in connection with the Discovia documents that Plaintiff's counsel obviously reviewed, as shown by the time records provided to the Court. Such arguments deflect the Court's attention from the facts that matter: the legal work that Plaintiff should not have needed to do.

      3)  <u>Defendants' Complaints About Invoices Are Misplaced</u>

Defendants argue that Plaintiff's legal fees are "undocumented" because "the Scarola Firm's Affidavits merely summarize their time." (Doc. # 166 at 6, 7.) This argument is inaccurate. It is also misplaced. A party seeking attorney's fees "must document the application

with contemporaneous <u>time records</u>" – not invoices or paid bills – "specifying for each attorney, the date, the hours extended, and the nature of the work done." <u>New York State Assoc. For Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136, 1148 (2d Cir. 1983) (emphasis added). The party need only provide "contemporaneous records [in] a form convenient for the Court," and the submission of the actual physical billing records is not required. <u>Lenihan v. City of New York</u>, 640 F. Supp. 822, 824 (S.D.N.Y. 1986). The purpose of any submission is to permit the Court to evaluate whether the hours were "usefully and reasonably expended" and not to demonstrate whether and which legal bills were paid. <u>Lunday v. City of Albany</u>, 42 F.3d 131, 134 (2d Cir. 1994). Thus, actual invoices, copies of bills, proof of payment, etc., are not necessary (although Plaintiff will provide them, as well as retainer agreements if the Court wishes).

In any event, Messrs. Scarola and Zubatov provided copies of their time records which Plaintiff has submitted, along with their affidavits explaining same. (Docs. # 163, 163-1, 163-2, 164, 164-1, 164-2.) Defendants' argument is thus without factual basis.

    4)    Disputes Between Plaintiff And Its Counsel, And
              <u>The Nature Of Plaintiff's Fee Arrangements Are Immaterial</u>

Defendants' next suggestion, that "fees may not actually be owed" (Doc. # 166 at 7), is also not germane to the lodestar calculation. Defendants bring up yet again the fact that Plaintiff's former counsel has commenced a proceeding against Plaintiff and others in New York State court concerning attorney's fees. Their next concern is that they have not seen the terms of Plaintiff's fee agreements and worry that fees have not been paid.

Those agreements are, for purposes of this sanctions application, extraneous. They are outside the lodestar mechanism. They do not address what Defendants must show to prevail: that the legal tasks and time incurred by Plaintiff were somehow unreasonable or not necessary. Indeed, these concerns fall outside the scope of this proceeding: a fee dispute between a party

7

and its counsel in another forum is (1) something to be resolved between those parties, not the third party paying a sanction, and (2) unrelated to the court rules, public policies and case and courtroom management concerns that provide for fee shifting in this forum and on these facts.

Specifically, these arguments are not relevant because litigants entitled to fee shifting are so-entitled regardless of whether their attorney's fees are "certain" or "contingent" or anything in between, it being decided long ago that the differences are at the root immaterial except as an adjustment to the lodestar amount (which Plaintiff does not seek). See, e.g., Burlington v. Dague, 505 U.S. 557, 112 S.Ct. 2638 (1992) (accepting as settled that contingency fee arrangements receive lodestar fee awards and addressing questions about adjustments particular to them); Fink v. City of New York, 154 F. Supp.2d 403, 407 (E.D.N.Y. 2001) (rejecting argument that a reduced-fee agreement changes the lodestar calculating and noting: "If anything, it is [the attorney's] customary rate and not the reduced rate they charged" that is evidence of the market rate).

The same rationale applies with greater force to sanctionable conduct during the course of litigation, as occurred here. Absurd results arise otherwise. For example, parties abused in discovery that can prove prior payment to counsel on an hourly basis could recover their costs, even if they lose the litigation in chief. On the other hand, a party hiring an attorney on a contingency, flat fee, or other "alternative" arrangement who does not immediately pay out of pocket could recover for counsel's wasted time and effort only if the party prevailed on the merits, thereby subsuming the attorney's time dealing with sanctionable conduct into the total recovery. Put simply, attorneys could more easily ignore the Rules of Civil Procedure if their adversaries' counsel is not paid by the hour, and the worse their conduct, the more likely it will succeed in prejudicing an adversary. Or, perhaps, only those litigation abuses too small to raise

with the Court could be reimbursed, even though they are less likely to be raised, because the client could afford to pay counsel to handle them, while egregious behavior worth raising with the Court but too expensive for the client to pay for out of pocket, would not be compensable. Either way, the Court would lose some of its power to control proceedings before it in the circumstances that really matter: when an adversary drives up costs to the point where the suffering party cannot afford to pay its counsel any more. These results make no sense, and are why the nature of the attorney's fee arrangements is typically immaterial.[3]

          5)      <u>Third Home's Claims For Offsets May Not Be Considered</u>

Finally, Defendants' suggestion that their sanctionable conduct should have no consequences because Plaintiff still has litigation risk and may owe it money at the conclusion of a trial (Doc. # 166 at 9-10) should not be considered. The purpose of the sanction imposed is to compensate Plaintiff and counsel for the time spent dealing with matters <u>outside</u> the merits of this dispute. Those costs were also imposed on the Court and all litigants presently before the Court. The salubrious effect of a sanction, to wit: discouraging litigants' bad behavior and securing the "just, speedy, and inexpensive determination of every action and proceeding," Fed. R. Civ. P. 1, is not met by allowing a litigant in error to urge the merits of the dispute to disown its prior, sanctionable conduct.

In addition, the remaining merits of the dispute are not presently before the Court and cannot be resolved on the pending application. Further, 3rd Home's position that it was the prevailing party on Plaintiff's breach of contract claims is also incorrect because Plaintiff prevailed on its breach of contract claim and its claims for breach of fiduciary duty, aiding and abetting fiduciary duty, and declaratory relief that Defendant cannot enforce the Joint Venture

---

[3] Plaintiff also notes that Defendants' double-hearsay statement that Mr. Moldovsky's firm is being paid a flat fee is incorrect as well as inadmissible as evidence of the fact asserted.

Agreement. Thus in no possible way can Defendants prevail on contractual attorney's fees claims, and its entitlement to other relief remains to be determined at trial.

C. <u>Defendants Concede The Amount Plaintiff's Hard Costs</u>

Returning to the amount of the sanction payable to Plaintiff, because Defendants concede Discovia's $17,934.14 forensics fees and VDiscovery's $953.87 copying and court filing costs (Doc. # 166 at 2), an analysis of these out-of-pocket expenses is unnecessary.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that its application be granted.

Dated: New York, New York
December 22, 2017

                                            BREM MOLDOVSKY, LLC

By: _____
      Brem Moldovsky, Esq.
      411 Lafayette Street, 6th Floor
      New York, New York 10003
      (212) 563-3370

      Attorney for Lightbox Ventures, LLC
      and Andrew Ellner