THE LAW FIRM OF

# JONATHAN R. MILLER

*Jonathan R. Miller, Esq.*
*Admitted in NJ, NY & PA*
jonathan.miller@lawyer.com

*Web: jmillerlawfirm.com*
*Cell: 609-955-1226*
*Fax: 609-964-1026*

*Main Office:*
*100 Overlook Center, 2nd Floor*
*Princeton, N.J. 08540*

*New York Office:*
*186 Joralemon St., Suite 1202*
*Brooklyn, N.Y. 11201*

October 17, 2018

**VIA EMAIL**
Hon. Denise L. Cote, U.S.D.J.
U.S. District Court for the
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

    Re:    <u>Lightbox Ventures, LLC v. 3rd Home Ltd., *et al.*, No. 16-cv-2379</u>

Dear Judge Cote:

    I am writing on behalf of Lightbox and Mr. Ellner in light of Mr. Scarola's letter of earlier today, alleging that my clients falsified the signature page on the March 11, 2016 retainer agreement.

    Given the serious nature of these allegations I have investigated this matter with appropriate urgency and will continue to do so. Based on my preliminary investigation, it appears that:

1. There is no dispute as to the genuineness of the signatures on both versions of the signature page.

2. Mr. Scarola personally verified the authenticity of the purportedly falsified signature page on several occasions, including:

   a. June 6, 2017 affidavit opposing my clients' motion to dismiss the state court proceeding;

   b. January 4, 2018 affidavit in support of his firm's application to the state court for an order to show cause;

   c. August 30, 2018 affidavit in support of his firm's motion to dismiss the interpleader proceeding;

   d. September 26, 2018 verified amended complaint filed in the state court; and

   e. October 12, 2018 affidavit in support of his firm's statutory lien claim.

3. My clients inform me that the version that has been submitted to this court and to N.Y. Supreme Court is the only one they have in their files. (If the other, fully executed version was sent to them as an email attachment at some point in time, as Mr. Scarola asserts, they did not

    note the difference at that time and did not retain it in their physical files.)

4. My clients further inform me that they are unsure and do not remember why Mr. Ellner signed the signature page twice. Mr. Ellner advises that, in general, he did not consistently append "Managing Member" to his signature when signing documents on behalf of Lightbox. For example, attached is the December 4, 2015 amendment to the joint venture agreement with 3rd Home.

5. Mr. Ellner thinks that he may have signed the retainer agreement beforehand and placed it in his desk at home, and may have executed the retainer agreement a second time in person at Mr. Scarola's office, since at that time Mr. Ellner's employer was a tenant in that office and Mr. Ellner and Mr. Scarola worked in the same physical office space at that time.

6. My clients vehemently deny the accusation that they knowingly forged documents and submitted false evidence to either court. Instead, they submitted the only version of the signature page that was in their files.

    I do not know why Mr. Scarola did not raise this issue until now, especially since the parties have extensively litigated the manner of execution of the retainer agreement for the past seventeen months. It is possible that Mr. Scarola did not discover the discrepancy until today; it is also possible that he held this information in reserve for use at an opportune time, i.e. today.

    Either way, accusations of intentional falsification of evidence are unwarranted, as is Mr. Scarola's demand for sanctions.[1] The only issue before the Court at present is that of determining the Scarola and Moldovsky Firms' competing statutory liens. The manner of execution of the Scarola Firm's retainer agreement may be germane to its contractual claims pending in state court, certainly, but not to the statutory lien issue.

    Thank you for Your Honor's consideration.

    Respectfully,

    Jonathan R. Miller

cc:    B. Moldovsky, Esq.

---

[1] If Mr. Scarola, an experienced lawyer, did not notice the difference for seventeen months and in five separate sworn affidavits, then Mr. Ellner, a non-lawyer, should not be faulted, either.

## FIRST AMENDMENT TO BUSINESS AGREEMENT

THIS AMENDMENT is made and entered into on _____, 2015, between LIGHTBOX VENTURES, LLC, a New York limited liability corporation ["LIGHTBOX VENTURES"] and 3RD HOME LIMITED, a Cayman Island company ["3RD HOME"].

### RECITALS

**WHEREAS**, LIGHTBOX VENTURES and 3RD HOME entered into that Business Agreement dated July 13, 2015 ["the Agreement"]; and,

**WHEREAS**, pursuant to the aforementioned Business Agreement the parties will be conducting a joint venture doing business as 3RDHOME Real Estate, through which they will create, maintain and operate an online platform for the sale and resale of vacation homes, fractional ownership properties and other properties and the matters related thereto; and,

**WHEREAS**, the parties have subsequently negotiated for an Amendment to the Agreement to provide greater clarity regarding issues related thereto and, additionally, to modify the provisions set forth in Paragraph 15 of the Agreement, to change the name YourHome to LIGHTBOX VENTURES throughout the Agreement, to modify the language of the Agreement which refers to the business as "resale" to make it "sale and resale" in the following four (4) places: the Introduction and Paragraphs 1(e), 1(g), and 2(f), and to add an additional clause as Paragraph 16, as well. Otherwise, the Agreement remains unchanged, except for these amendments set forth herein.

**THEREFORE**, and in exchange for valid consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree, pursuant to the provisions of Paragraph 5 of the Agreement, to amend it as follows.

Paragraph 15 of the original Agreement provided as follows:

### 15. TERMINATION

This is a temporary interim agreement to indicate the intent of the parties, and will remain in effect until July 1, 2018, or an alternate date if this Agreement is later modified in writing. If 3RD HOME should desire to terminate because of unanticipated issues before July 1, 2017 then it will promptly reimburse LightBox for any unreimbursed costs of the technology build out.

Paragraph 15 is amended to state as follows:

### 15. TERMINATION

(a) The Agreement shall be for a term of thirty (30) months, expiring on July 1, 2018 , unless terminated earlier in accordance with the provisions set forth below. Following this initial thirty (30) month term, the Agreement shall automatically renew for thirty (30) month terms in accordance with the following criteria: The first thirty (30) month renewal shall occur if 3RD HOME receives

revenues from this joint venture of not less than $350,000 for the period of thirty (30) months preceding July 1, 2018. The second thirty (30) month renewal of this Agreement shall occur if 3RD HOME receives revenues from this joint venture of not less than $650,000 in the thirty (30) months preceding the expiration date of this first renewal, which will be January 1, 2021. Subsequently, this Agreement shall automatically renew for consecutive thirty (30) month periods, as long as the revenues received by 3RD HOME from this joint venture increase by thirty percent (30%) for each of these consecutive periods. For example, at the end of the third thirty (30) month period, the Agreement shall automatically renew for another thirty (30) month period as long as 3RD HOME has received revenues of not less than $845,000 in the previous thirty (30) month period. Accordingly, at the conclusion of the period prior to each of the expirations of these consecutive thirty (30) month periods, the parties shall jointly perform accountings to determine if the revenue target was met, and the parties shall share equally the cost of these accountings. For these accountings, revenues shall be calculated and determined in accordance with generally acceptable accounting principles. Absent the achievement of the required minimum revenue amounts for each relevant time period, the Agreement shall expire either on its expiration date or on the date the accounting is completed, whichever is later, unless terminated earlier, as provided herein. The parties may mutually agree in writing to renew the agreement if a specific thirty (30) month profit target is not met. In such cases, the profit target for the next renewal will remain unchanged unless modified in writing.

**(b)** LIGHTBOX VENTURES may terminate this Agreement in advance of its expiration upon thirty (30) days' written notice. In the event LIGHTBOX VENTURES terminates this Agreement pursuant to this clause, it waives any claim it has or may have for reimbursement of the technology costs referenced in Paragraph 1(a), herein, and the fees referenced in Paragraph 1(d), herein. Furthermore, in the event LIGHTBOX VENTURES so terminates this Agreement in advance of its expiration, without selling its portion of the joint venture to either 3RD HOME or a third party, in accordance with the terms of Paragraph 16 herein, it thereby waives any claim it has or may have to its share of the joint venture between the parties as set forth in this Agreement.

**(c)** 3RD HOME may terminate this Agreement in advance of its expiration upon a upon thirty (30) days' written notice without cause. In the event of an early termination pursuant to this clause, 3RD HOME agrees to reimburse LIGHTBOX VENTURES for the technology costs referenced in Paragraph 1(a) herein, to the extent those costs are not already fully recouped at the time of said termination, pursuant to Paragraph 1(f), herein. Furthermore, in the event 3RD HOME elects to terminate this Agreement in accordance with this Paragraph 15(c), it agrees that it will not to re-enter the business of or otherwise operate, in any manner, an online platform for the sale and resale of vacation homes and fractional ownership properties or otherwise engage in any venture which is intended to compete with or does compete with LIGHTBOX VENTURES in the business contemplated by this Agreement for a period of time totaling two (2) years following the date of termination of this Agreement. Nothing herein however shall restrict, prohibit or otherwise restrain 3RD HOME from the continued operation of its other business activities, including but not limited to its operation of a vacation property

management and home exchange website and those matters related hereto

(d) Either party may terminate this agreement due to cause as follows. In the case of LIGHTBOX VENTURES, they may terminate this Agreement due to cause if 3RD HOME does not adequately create an attractive inventory of homes and/or generate adequate sales leads. If 3RD HOME is unable to cure such poor performance within a reasonable period of time, and LIGHTBOX VENTURES decides to exercise its right to terminate the Agreement due to cause, 3RD HOME agrees not to re-enter the business of or otherwise operate, in any manner, an online platform for the sale and resale of vacation homes and fractional ownership properties or otherwise engage in any venture which is intended to compete with or does compete with LIGHTBOX VENTURES in the business contemplated by this Agreement for a period of two (2) years following the date of termination of this Agreement. In the case of 3RD HOME, they may terminate due to cause if LIGHTBOX VENTURES does not expeditiously follow up on leads generated and otherwise make a good faith effort to generate sales as contemplated by this Agreement. If LIGHTBOX VENTURES is unable to cure such poor performance within a reasonable period of time, 3RD HOME will promptly reimburse LIGHTBOX VENTURES for any unreimbursed costs of the technology build out and may continue to operate the business independently.

(e) In addition, in the event 3RD HOME wishes to terminate this Agreement with LIGHTBOX VENTURES but continue to operate the business of the joint venture contemplated by this Agreement independently of LIGHTBOX VENTURES, 3RD HOME will buy out LIGHTBOX VENTURES from the joint venture, and the price of such buyout will be determined by averaging three (3) separate prices determined by three separate and independent accredited business valuation professionals who will each value the joint venture created by this Agreement. 3RD HOME will pay all costs of such valuations. At the conclusion of these valuations 3RD HOME will pay to LIGHTBOX VENTURES an amount equal to fifty percent (50%) of the average of the three (3) values as determined by the aforementioned business valuation professionals. Upon such payment the joint venture between the parties shall terminate.

(f) In the event of a termination of this Agreement pursuant to Paragrpah 15 above (by LIGHTBOX VENTURES),-or 15(e), above (by 3RD HOME), it is agreed and understood that the operation of the joint venture shall cease within a reasonable time, thereafter. In such event, the parties agree to cooperate with one another to wrap up the affairs of the joint venture in an appropriate and orderly manner, and to sign any and all documents necessary to effectuate the termination and dissolution of the joint venture. As part of the winding up of the affairs of the joint venture, it is agreed and understood that each party will take those steps necessary, and within a reasonable period of time, to deactivate any links to their respective websites that identify the remaining party.

(g) Other than as set forth herein, neither party shall have the right to use the other party's trademarks or name in any manner whatsoever other than in the materials that are approved in writing by the party whose trademarks or name is being used, and only for the express purposes set forth herein. Any such

permission to use the aforementioned names and/or marks shall cease upon the expiration or termination of this Agreement, in accordance herewith.

The Agreement is further amended in order to add Paragraph 16 (which otherwise did not exist in the original Agreement). Paragraph 16 states as follows:

### 16. RIGHT OF FIRST REFUSAL

(a) It is agreed and understood that the scope of this joint venture is limited to the operation of an online platform for the sale and resale of vacation homes, fractional ownership properties and other properties and the matters related thereto. The scope of this joint venture does not include any other operations which are maintained or which might be maintained in the future by LIGHTBOX VENTURES, or, the current operations or any future operations of 3RD HOME including, but not limited to its operation of a vacation property management and home exchange website which affords its participants with the right to exchange their second homes with other luxury vacation homes for purposes of access around the world. Accordingly, the rights extended to each other, herein, for a right of first refusal, are limited to the acquisition by one of the parties of the operations of the remaining party's fifty percent (50%) interest in the joint venture between the parties, as contemplated by the Agreement, as amended herein.

(b) In the event either party elects to sell its interest in this joint venture (separate and aside from their other assets and operations), then it shall first give the non-selling party notice of its intent to sell and afford the non-selling party with the right to match any written offer, per the terms contained therein so that the remaining party shall then own one hundred percent (100%) of the venture. Otherwise, any attempted transfer of an interest to a third party shall be null and void. If the non-selling party declines to exercise said option, then the selling party shall be authorized to sell its rights to a third party, consistent with the aforementioned offer.

(c) 3RD HOME retains at all times, without restriction, the right to sell its other assets and/or its operations, without the consent of LIGHTBOX VENTURES. Additionally, 3RD HOME retains the right to sell its assets and its operations without the real estate entity contemplated by this joint venture, or with the real estate entity contemplated herein. In the event 3RD HOME elects to sell all of its operations and assets, including the real estate entity provided herein, then this joint venture shall be appraised by a third party in accordance with generally acceptable accounting principles. In the event of any such all-inclusive sale, LIGHTBOX VENTURES shall be entitled to compensation for its portion of the joint venture's value. Upon conclusion of any such sale to a third party, this joint venture shall terminate.

This Amendment has been executed in counter-parts and electronically pursuant to the provisions of Paragraph 7 of the Agreement.

[SIGNATURE PAGES FOLLOW]

LightBox Ventures, LLC

Date: 12/11/15

By: _____
Andrew Ellner
Title: Managing Member, LightBox Ventures, L.L.C.

3RD HOME LIMITED

Date: 11/4/15

By: _____
Earl Wade Shealy, Jr.
Title: Chairman and CEO, 3RD HOME