# Exhibit C

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

SCAROLA MALONE & ZUBATOV LLP,

       Plaintiff,

  v.

ANDREW ELLNER, LIGHTBOX CAPITAL
MANAGEMENT, LLC and LIGHTBOX VENTURES,
LLC,

       Defendants.

No. 651324/2017

(Mot. Seq. #001)

**AFFIDAVIT OF
ANDREW ELLNER**

---

STATE OF NEW YORK )
       ) ss.
COUNTY OF NEW YORK )

  Andrew Ellner, under the penalty of perjury, deposes and states as follows:

  1.  I am a natural person, over the age of 18, and have personal knowledge of the facts set forth below.

  2.  I am a defendant in this litigation. I am also the Managing Member of Lightbox Capital Management, LLC and Lightbox Ventures, LLC.

  3.  Attached hereto as Exhibit A is a true and correct copy of the Verified Complaint served upon the Defendants in this matter.

  4.  I was hired by Evolution Capital Management, LLC, to open its New York City office. The office is located at 1700 Broadway, 41st floor, in offices rented from Plaintiff Scarola Malone & Zubatov, LLP. Attached hereto as Exhibit B is a true and correct copy of an invoice for this office rental. I frequently saw and spoke with Plaintiff and its personnel because we shared office space. These invoices are usually delivered by hand to my office at 1700 Broadway.

1

5. Attached hereto as Exhibit C is a true and correct copy of the Amended Complaint in the "3rd Home Litigation," captioned Lightbox Ventures v. 3rd Home Ltd, No. 16 Civ. 23789 (DLC), now pending in Federal Court in Manhattan

6. Attached hereto as Exhibit D is a true and correct copy of the Answer, Counterclaims and Third-Party Claims in the 3rd Home Litigation.

7. During the ten months through December, 2016, Plaintiff charged Lightbox Ventures more than $600,000 in legal fees for what began as a straightforward breach of a written contract claim. True and correct copies of redacted invoices issued by Plaintiff are attached hereto as Exhibit E.

8. Attached hereto as Exhibit F is a true and correct copy of the current Scheduling Order in the 3rd Home Litigation.

9. Attached hereto as Exhibit G is a true and correct copy of the Retainer Agreement dated March 11, 2016, between Plaintiff and Lightbox Ventures that I delivered to Plaintiff on or about that date.

10. Attached hereto as Exhibit H is a true and correct copy of a letter dated March 17, 2016, from Plaintiff to Philip Jones, Esq., counsel to 3rd Home in the 3rd Home Litigation, which begins "I have been asked by Lightbox Ventures LLC ("Lightbox") to represent it in connection with its dealings with 3rd Home Ltd."

11. Attached hereto as Exhibit I is a true and correct copy of a letter dated August 9, 2016, from Plaintiff to the Honorable Denise L Cote, United States District Judge, who presides over the 3rd Home Litigation, which begins "We represent the plaintiff Lightbox Ventures LLC in this case."

12. Attached hereto as Exhibit J is a true and correct copy of a portion of the transcript of a hearing that occurred on October 21, 2016, before the Honorable Denise L. Cote, in connection with Lightbox Venture's motion for a preliminary injunction in the 3rd Home Litigation.

13. Most of my dealings with Plaintiff took place, at least initially, in face to face meetings, as I was a tenant in Plaintiff's office and could easily walk across the floor to speak with Mr. Scarola or Mr. Zubatov. I understood from Plaintiff that the 3rd Home litigation would cost approximately $20,000 to $30,000 per month, which cost would eventually be paid by 3rd Home pursuant to the joint venture agreement at issue in the litigation.

14. After Lightbox Ventures' monthly legal bills climbed to $100,000 in June 2016, I confronted Mr. Scarola about the size of the bills and the fact that they diverged substantially from his original estimates. Many conversations took place in our shared office space at 1700 Broadway. Plaintiff thereafter agreed to defer 40% of its bills contingent upon payment after recovery in the 3rd Home Litigation. But in November 2016, it refused to honor that arrangement and instead presented an amendment to the Retainer Agreement containing different terms. I viewed this as a "bait and switch." Several months of fruitless discussion ultimately failed to yield an agreement to resolve Lightbox Ventures' dispute about its legal bills. The crux of the problem was that, if Lightbox Ventures settled without receiving a large amount of cash, or refused to settle on bad terms, then Plaintiff's proposals would have increased the amount owed to Plaintiff to as much as 150% of the amounts previously billed.

15. A true and correct redacted copy of the proposed amendment is attached hereto as Exhibit K.

16. The redacted portions of this document reflect various contingencies about how Plaintiff would be compensated depending on the outcome of the 3rd Home Litigation. I believe that this document was an attempt to impose liability upon me personally.

17. Plaintiff was nasty and disrespectful to opposing counsel and his client, accusing counsel of "bizarre hubris" and other provocative things, and at one point threatening the client, Mr. Shealy, with statements like "we're going to get your house" when 3rd Home loses the litigation.

18. During a court-ordered mediation in July 2016, Plaintiff was so abrasive that counsel and client almost walked out. Even though the mediation seemed to result in a compromise, Plaintiff's conduct so aggravated the owner of 3rd Home, Mr. Shealy, that the next day, 3rd Home further breached the joint venture agreement by taking down the joint venture's website, and then filed claims against me. Plaintiff's conduct and decisions led to those claims against me.

19. Lightbox Ventures felt it necessary to hire a second expert witness in the 3rd Home Litigation due to decisions made by Plaintiff, which I do not think should have been necessary.

20. Mr. Scarola often refused to speak with opposing counsel on the theory that doing so showed "weakness." Attached hereto as Exhibit L is a true and correct redacted copy of an e-mail dated November 17, 2016, in which Mr. Scarola so states. I believe that this attitude made settlement of the 3rd Home Litigation more difficult.

21. On another occasion, Mr. Scarola refused to speak with a lawyer that I had engaged to hopefully restore settlement negotiations, named Mr. Olivo, unless the conversation was recorded. In the same breath, he urged Mr. Olivo to take over as counsel in the 3rd Home

Litigation. Attached hereto as Exhibit M is a true and correct redacted copy of e-mails dated January 5, 2017, and January 9, 2017, concerning same.

22. Plaintiff never assigned work to associates or other attorneys who charged less than Mr. Scarola ($765/hour) and Mr. Zubatov ($495/hour). In order to avoid spending attorney time on tasks for which it feared it might not be paid, Plaintiff encouraged me and my wife to perform tasks, such as drafting an affidavit, that are typically performed by lawyers.

23. In particular, I drafted my affidavit for use in an October 2016 preliminary injunction hearing and provided it to Plaintiff, which reformatted the document but evidently did not focus on its contents, because Judge Cote struck 47 of the 55 pages of the affidavit. Attached hereto as Exhibit N is a true and correct copy of my October 6, 2016, affidavit submitted in Federal court, marked up to show the text that had been stricken.

24. Attached hereto as Exhibit O is a true and correct redacted copy of an e-mail exchange that took place on February 16, 2017, in which Plaintiff stated "it is not possible for us to continue the representation."

25. Attached hereto as Exhibit P is a true and correct redacted copy of an e-mail dated February 16, 2017, in which Mr. Scarola states "we cannot under any circumstances continue to represent you" and, he continues, "I am not comfortable being in the same room with you . . ." referring to me personally.

26. In December 2016, while Mr. Scarola was on vacation, I spoke with Mr. Zubatov in his office located at 1700 Broadway, 41st floor, where my office is also located, because Mr. Scarola was on vacation. Mr. Scarola then wrote to me stating that I should "not to go directly to my colleagues and employees," including his partner, Mr. Zubatov, who worked

5

extensively on the 3rd Home litigation in Federal Court. Attached hereto as Exhibit Q is a true and correct redacted copy of an e-mail dated December 12, 2016, to that effect.

27.  Attached hereto as Exhibit R is a true and correct copy of an e-mail dated December 19, 2016, concerning the efforts of Plaintiff in the 3rd Home Litigation and its request that Lightbox Ventures obtain new counsel.

28.  Attached hereto as Exhibit S is a true and correct copy of a letter dated February 27, 2017, terminating Plaintiff's representation of Lightbox Ventures.

29.  Attached hereto as Exhibit T is a true and correct redacted copy of an e-mail exchange from November 10, 2016, concerning deferral of payment of Plaintiff's invoices, and another e-mail dated November 14, 2016, expressing "willingness to work with you on billing and costs in many ways at many times," and mentioning "deferrals to date" which are "substantial."

WHEREFORE, I respectfully request that the court dismiss the claims against myself and the two Lightbox LLC Defendants, and/or issue a stay of these proceedings, as requested in the accompanying motion papers.

Dated: New York, New York
May 11, 2017

_____
Andrew Ellner

Sworn to before me, this
11th day of May 2017

_____
Notary Public

MICHAEL L ANDRITO
Notary Public - State of New York
NO. 01AN6326025
Qualified in New York County
My Commission Expires Jun 22, 2019